923 F.2d 470
 BAMON CORPORATION, d/b/a McCook Theatre, an Ohio
corporation, Plaintiff-Appellant,
v.
CITY OF DAYTON; Richard Clay Dixon, Mayor, City of Dayton;
James Newby, Chief of Police of City of Dayton;
City Council for the City of Dayton,
Defendants-Appellees.
 No. 90-3165.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 26, 1990.
Decided Jan. 17, 1991.
 
 Lee J. Klein (argued), Bradley J. Shafer, Daniel A. Pawluk, Klein & Shafer, Okemos, Mich., for plaintiff-appellant.
 J. Anthony Sawyer, Kenneth Eugene Barden (argued), City of Dayton Dept. of Law, Dayton, Ohio, for defendants-appellees.
 Before MARTIN and JONES, Circuit Judges, and ENGEL, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Bamon Corporation, which owns and operates the McCook Theatre, appeals the decision of the district court granting the City of Dayton's motion for summary judgment. Bamon Corp., d/b/a McCook Theatre v. City of Dayton, 730 F.Supp. 80 (S.D.Ohio 1990). For the reasons set forth in this opinion, we affirm.
 
 
 2
 On October 18, 1989, the city commission of Dayton, Ohio, passed an ordinance regulating the design and occupancy of video booths located in "Amusement Arcades" and in which a "film or video viewing device" is used to exhibit material depicting certain enumerated sexual acts and bodily functions. Sections 136.08-09 of Dayton's Revised Code of General Ordinances. Section 136.08 of the ordinance defines an "Amusement Arcade" as "any place of business [other than hotels or motels] in which a film or video viewing service or devices are located for the use of entertainment of a person or persons patronizing the place of business." If the material depicted by "film or video viewing devices" within an amusement arcade depicts any of the enumerated subjects listed in Section 136.09(A), every video booth in which such material is shown must comply with the following requirements:
 
 
 3
 (1) Be visible from a well-illuminated continuous main aisle;
 
 
 4
 (2) Not be obscured by any curtain, door or other enclosure;
 
 
 5
 (3) All side or rear walls must be without holes or openings;
 
 
 6
 (4) Shall not be occupied by more than one patron at a time;
 
 
 7
 (5) Be illuminated by a light bulb of a wattage of no less than 25 watts.
 
 
 8
 Section 136.09(B). The ordinance further provides that any "owner, operator, employee, or agent of an amusement arcade" who violates these requirements, and/or who allows or permits a violation thereof, and any patron who violates the one-patron-per booth limitation, is guilty of a first degree misdemeanor.
 
 
 9
 Bamon Corporation is an Ohio corporation which has been doing business as McCook Theatre at the same location in the City of Dayton for the past ten years. Plaintiff is primarily engaged in the sale of books and magazines, the sale, rental, and exhibition of motion picture films, including videotapes, and the exhibition of live entertainment, all of which are of an "adult" variety. Plaintiff's premises contain approximately thirty-five viewing booths in which a patron can view a pre-set movie for twenty-five cents, four booths in which a videotape may be viewed for five dollars, and thirteen booths in which live nude or semi-nude entertainment may be viewed from behind a glass plate. All of the booths on plaintiff's premises are totally enclosed, constructed with floor-to-ceiling walls, and contain a full length door that can be locked by the patron from the inside.
 
 
 10
 The second reading of the ordinance took place at a public meeting of the Dayton City Commission held on October 18, 1989. The ordinance was passed by a unanimous vote of the commission at this meeting. A transcript was made of this meeting and was stipulated to represent, "the universe of information that was submitted to the city commissioners, along with the wording of the ordinance in question, prior to the affirmative vote which enacted the same."
 
 
 11
 Plaintiff filed the instant action on November 13, 1989, seeking an order from the district court declaring the ordinance unconstitutional and permanently enjoining its enforcement. Plaintiff alleged that the ordinance violated the first, fourth, ninth, and fourteenth amendments to the United States Constitution, as well as "corollary" provisions under the Ohio Constitution, and was preempted by the federal Video Privacy Protection Act, 18 U.S.C. Sec. 2710. The district court issued a temporary restraining order enjoining the enforcement of the ordinance until a ruling by the court. On January 25, 1990, in a thorough 30-page memorandum, the district court granted summary judgment to the City of Dayton. This appeal followed.
 
 
 12
 The City of Dayton does not contend that the video entertainment or live dancing involved in this matter are classified as legally obscene and, therefore, we presume that the materials in question are afforded first amendment protection. See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 756, 96 S.Ct. 1817, 1822, 48 L.Ed.2d 346 (1976); Christy v. City of Ann Arbor, 824 F.2d 489, 492 (6th Cir.1987), cert. denied, 484 U.S. 1059, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988) (citing Young v. American Mini Theatres, 427 U.S. 50, 73 n. 1, 96 S.Ct. 2440, 2453 n. 1, 49 L.Ed.2d 310 (1976)).
 
 
 13
 It is undisputed that the Dayton ordinance, by requiring the removal of the doors on video viewing booths, will regulate the manner in which the McCook Theatre conveys protected speech to its patrons. Regulations enacted for the purpose of restraining speech on the basis of its content presumptively violate the first amendment. City of Renton v. Playtime Theatres, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (citing Carey v. Brown, 447 U.S. 455 n. 7, 100 S.Ct. 2286 n. 7, 65 L.Ed.2d 263 (1980)). However, a municipality may impose reasonable restrictions on the time, place, or manner of protected speech. Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989); Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984); United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). We, therefore, are called upon to determine whether the Dayton ordinance is a valid time, place and manner regulation. See, e.g., Doe v. City of Minneapolis, 898 F.2d 612 (8th Cir.1990); Berg v. Health and Hospital Corp., 865 F.2d 797, 802 (7th Cir.1989); Wall Distributors, Inc. v. City of Newport News, 782 F.2d 1165 (4th Cir.1986).
 
 
 14
 The Dayton ordinance was analyzed by the district court using the factors set forth in Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). We believe, however, that the Supreme Court's recent decision in Ward v. Rock Against Racism, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989) governs our review in this case.
 
 
 15
 In Ward, the Supreme Court held that municipalities may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are: (1) justified without reference to the content of the regulated speech, (2) narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels for communication of the information. Ward, 109 S.Ct. at 2753 (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984)).
 
 
 16
 Plaintiff argues on appeal that the Dayton ordinance's restrictions are based upon both the content of the entertainment and the impact of that content upon the viewer and, therefore, are presumptively unconstitutional. See City of Renton, 475 U.S. at 47, 106 S.Ct. at 928. In support of this argument, plaintiff cites the fact that the ordinance's restrictions are only applicable to those videos viewing booths which depict the type of sexual conduct enumerated in section 136.09(A) of the ordinance.
 
 
 17
 With respect to the determination of content-neutrality, the Supreme Court has held that the principle inquiry, "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward, 109 S.Ct. at 2754. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id. (citing Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47-48, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986)). Regulations that apply to a particular category of speech because the regulatory targets happen to be associated with that type of speech are properly characterized as content-neutral, as long as the regulations are justified without reference to the content of that speech. See Boos v. Barry, 485 U.S. 312, 320, 108 S.Ct. 1157, 1163, 99 L.Ed.2d 333 (1988).
 
 
 18
 The regulations imposed by the Dayton ordinance are justified by public health concerns. The ordinance is aimed at eliminating carnal sexual activity in closed peep show booths in adult bookstores which, the city commission found, contributes to the epidemic spread of sexually transmitted diseases, including AIDS. See Preamble to Ordinance. The ordinance is aimed at eliminating the secondary effects produced by totally enclosed video viewing booths and is not attempting to regulate what is shown in those booths. It, therefore, is properly analyzed as content neutral.
 
 
 19
 Under the Constitution, the Dayton ordinance must also be narrowly tailored to serve a substantial governmental interest. Ward, 109 S.Ct. at 2756; Renton, 475 U.S. at 50, 106 S.Ct. at 930. It is clear that the Dayton ordinance meets this requirement.
 
 
 20
 Our first inquiry is whether the city commission of Dayton was pursuing a significant governmental interest by enacting this ordinance. To establish a substantial governmental interest, it is necessary only that Dayton demonstrate that the evidence which it relied upon "is reasonably believed to be relevant to the problem that the city addresses." Renton, 475 U.S. at 51-52, 106 S.Ct. at 931. Plaintiff argues that the city commission did not have sufficient factual support to substantiate the passage of the ordinance. Along with evidence from other locales, the city commission was presented with evidence of sexual activity occurring within video viewing booths in Dayton's "adult" bookstores; the record establishes that a proper factual foundation of relevant evidence exists to support the Dayton ordinance.
 
 
 21
 We next determine whether the ordinance is narrowly tailored to the goal of reducing the epidemic spread of sexually transmitted diseases, including AIDS. With respect to the requirement of narrow tailoring, the Supreme Court has held that "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation" the requirement is satisfied. Ward, 109 S.Ct. at 2758 (quoting United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 2906, 86 L.Ed.2d 536 (1985)). The Court went on to explain that, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech restrictive alternative." Id. Plaintiff argues that the Dayton ordinance burdens protected speech substantially more than is necessary to further the government's legitimate interest. This argument deserves little attention since similar "open door" ordinances have unanimously been found to be sufficiently narrowly tailored. See, e.g., Doe v. City of Minneapolis, 898 F.2d at 618-619; Berg, 865 F.2d at 802-804; Wall Distributors, Inc., 782 F.2d at 1170.
 
 
 22
 Finally, Ward requires that a time, place and manner regulation, "leave open ample alternative channels of communication." Ward, 109 S.Ct. at 2760. This requirement is easily satisfied by the Dayton ordinance because it neither limits the number of viewing booths, nor attempts to regulate the material shown in the booths. The Dayton ordinance does not, in any real fashion, limit the availability of video booths as a means of viewing sexually explicit material. Thus, we find that the Dayton ordinance is a valid time, place and manner regulation.
 
 
 23
 Plaintiffs contend, on behalf of their customers, that their customers have a privacy right to view these videos in seclusion. This argument is without merit. The Supreme Court in Paris Adult Theatre I v. Slaton, 413 U.S. 49, 65-67, 93 S.Ct. 2628, 2639-40, 37 L.Ed.2d 446 (1973) held that the constitutionally protected right to watch obscene movies in the privacy of one's own home, see Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), did not import a similar right to watch the same movies in a public place. In this context, any protection offered by the constitutional right to privacy ceases when the locus of the conduct shifts to a place of public accommodation. Paris, 413 U.S. at 66, 93 S.Ct. at 2639. Therefore, we find that plaintiff's patrons do not enjoy a constitutionally protected privacy right to view these videos in seclusion. See Doe v. City of Minneapolis, 898 F.2d 612, 615 n. 11 (8th Cir.1990); Ellwest Stereo Theatres v. Wenner, 681 F.2d 1243, 1247 (9th Cir.1982); see also Broadway Books, Inc. v. Roberts, 642 F.Supp. 486, 492 (E.D.Tenn.1986).
 
 
 24
 We likewise reject plaintiff's argument that the Dayton ordinance is preempted by the federal Video Privacy Protection Act, 18 U.S.C. Sec. 2710. There is simply nothing in the Video Act to support such a conclusion.
 
 
 25
 Therefore, for the reasons stated above, we affirm the district court's decision granting defendant's motion for summary judgment.