UNIVERSITY BOOKS AND VIDEOS, INC., d/b/a University Books, et al. Plaintiffs,

v.

METROPOLITAN DADE COUNTY, Defendant.

Nos. 96–0952–CIV, 96–0962–CIV, 96–0995–CIV, 96–0996–CIV, 96–1141–CIV, 96–1143–CIV, 96–1337–CIV, 96–1338–CIV and 96–1339–CIV.

United States District Court, S.D. Florida.

Aug. 27, 1999.

Nathaniel L. Barron, Coral Gables, FL, for University Books and Videos, Inc., DBJ Enterprises, Inc., 11711 Book and Video Corp., 2316 Corp., Miami Factor, Inc., Plaintiffs.

Roger J. Schindler, Simon Schindler & Sandberg, Miami, FL, for Perrine Adult Book and Video, Inc., Sun Beach Videos, Inc., John Doe, GoldCoast Book and Video, Inc., 167th Street Corp., James T. Robinson, Angel T. Enterprises, Inc., Plaintiffs.

Stephen Michael Cody, Miami, FL, Perrine Book and Video, Inc., Plaintiff.

Clyde DeWitt, Weston Garrou & DeWitt, Los Angeles, CA, for 14907 SN Corp., Prime Time Book and Video, Inc., Home of the Brave Lane of the Free, Inc., John Doe, Plaintiffs.

Barry Leonard Halpern, Coral Gables, FL, for Bird Road Book and Video, Inc., 7351 XZ, Inc., Mr. Oliver, Inc., Plaintiffs.

Yale Taitz Freeman, Naples, FL, for Home of the Brave Land of the Free, Inc., Plaintiff.

John Darrel McInnis, David Stephen Hope, Dade County Atty's Office, Miami, FL, for Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

KING, District Judge.

THIS CAUSE comes before the Court on Plaintiffs' Joint Motion For Summary Judgment Concerning Part II of the Complaint, filed May 26, 1999. Defendant filed its response—along with a Cross–Motion For Summary Judgment—on June 11, 1999, to which Plaintiffs replied on June

18, 1999. The Court heard Oral Argument on the Parties' Motions on June 29, 1999.

## I. Factual and Procedural Background

On January 16, 1996, the Board of County Commissioners ("Board") of Defendant Metropolitan Dade County ("County") sought to curb the spread of the human immunodeficiency virus ("HIV"), acquired immune deficiency syndrome ("AIDS"), and other sexually-transmitted diseases by enacting Ordinance 96–13.[1] *See* Metropolitan Dade County Ordinance No. 96–13, preamble (Jan. 16, 1996). The primary goal of Ordinance 96–13 was to prohibit sexual activity[2] in adult bookstores and adult video stores.[3] *See id.* at § 2(3). In order to ensure that sexual activity does not occur in adult bookstores and adult video stores, Ordinance 96–13 strictly regulates viewing rooms,[4] holes in interior

---

1. The Board premised their action on the following public health findings:

> WHEREAS, Acquired Immune Deficiency Syndrome (AIDS), a fatal disease, and other sexually transmitted diseases in Dade County and throughout the United States, have reached epidemic proportions; and
> WHEREAS, certain adult bookstores and adult video stores in Dade County knowingly foster, encourage, or allow sexual activity to take place on their premises thereby posing a significant risk for the transmission of the human immunodeficiency virus (HIV) which is associated with AIDS and other sexually transmitted diseases; and
> WHEREAS, such adult bookstores and adult video stores that encourage or allow such sexual activity to take place on their premises present a danger of contagion, illness, and death to their patrons and to the entire community of Dade County different in degree and kind from other facilities that may also serve as amplification systems for the spread of sexually transmitted diseases; and
> WHEREAS, during the existing epidemics of AIDS and other sexually transmitted diseases, any benefits resulting from the operation of such establishments are outweighed by the danger from the establishments pose to the public health, safety. and welfare; and
> WHEREAS, the regulation of such establishments is necessary to protect the entire community of Dade County because sexually transmitted diseases, including AIDS, recognize no boundaries between their victims.

See Ordinance 96–13, preamble. Notably, nowhere in its findings does the Board provide any quantitative or qualitative foundation for (1) the occurrence of sexual activity in adult bookstores and adult video stores, (2) how such activity, if it exists, poses a "significant risk" or "danger ... different in degree and kind" of exposure to HIV and other sexually-transmitted diseases, or (3) the factors in the balancing that allegedly counseled in favor of the Board's action.

2. The Ordinance defines sexual activity broadly to include "oral, anal, or vaginal penetration by, or contact with, the sexual organ of another; the anal or vaginal penetration by, or contact with either the body part of another or an object held by another; or the handling or fondling of the sexual organ for the purposes of masturbation." Ordinance 96–13, § 2(2)(f).

3. The crux of Ordinance 96–13 lies in the following provision, which threatens both the patrons and the owners/operators of adult bookstores and adult video stores:

> (a) No person shall engage in sexual activity in an adult bookstore or adult video store.
> (b) No owner or operator of an adult bookstore or adult video store shall allow or permit any person to engage in sexual activity on the premises. The occurrence of sexual activity in an adult bookstore or adult video store, whether or not the owner or operator has knowledge of the occurrence, shall be a violation of this ordinance. It is the responsibility of the owner or operator of the adult bookstore or adult video store to take steps to ensure such activity does not occur on the premises.

Ordinance 96–13, § 2(3).

4. Ordinance 96–13 first mandates that the only type of seating that may be provided in any viewing room is a single chair "of the type designed to accommodate only one person." Ordinance 96–13, § 2(4)(a). More important with respect to viewing rooms, however, is the following regulation, which requires a permanently open entranceway and view into any such room:

> Each viewing room shall have a permanently open entranceway and view not less than two feet eight inches wide and not less than seven feet high, which may not be closed by any door, curtain, or other partition which would be capable of wholly or partially obscuring any person in the viewing room. This entranceway and view shall open directly to an adjacent public room where the

walls,[5] and lighting within these establishments. *See id.* at § 2(4). Presumably to ease in monitoring and enforcement, Ordinance 96–13 further requires the prominent posting of the names and addresses of such stores' owners and operators. *See id.* at § 2(5).

Under Ordinance 96–13, each incident of sexual activity may be the basis for a separate violation. *See id.* at § 2(6)(a). Civil monetary penalties are to be imposed according to the following schedule: (a) $100 for a person who engages in sexual activity at an adult minimovie arcade, (b) $1000 for an owner/operator who allows sexual activity at an adult minimovie arcade, (c) $500 for an owner/operator who fails to provide only single-seat chairs in viewing rooms, (d) $500 for an owner/operator who fails to provide minimum lighting, (e) $500 for an owner/operator who fails to provide permanently open entranceways into viewing rooms, and (f) $500 for an owner/operator who fails to post the names and addresses of the store's owners/operators. *See id.* at § 2(6)(c). In addition, Ordinance 96–13 imposes a criminal penalty of not more than $1000 or not more than 60 days in jail, or both, on owners/operators of adult bookstores and adult video stores who provide or knowingly allow holes in interior walls that are used for sexual activity between persons in adjoining rooms. *See id.* at § 2(6)(b). Any adult bookstore or adult video store that is found to have violated Ordinance 96–13 three or more times in any six-month period is declared a public nuisance that endangers the health, safety, and welfare of the County's residents. *See id.* at § 2(7). Once declared a public nuisance, the store is subject to an injunction closing it. *See id.*

Plaintiffs operate adult bookstores and adult video stores in unincorporated areas of the County. *See* Part II of Compl., at ¶ 25. Plaintiffs allege that enforcement of Ordinance 96–13 would violate the following federal and state laws: (1) 42 U.S.C. § 1983, by infringing upon Plaintiffs' right to free speech and expression, as guaranteed by the First and Fourteenth Amendments to the United States Constitution, (2) Article I, section 4 of the Florida Constitution, which also protects Plaintiffs' right to free speech and expression, and (3) Article I, section 23 of the Florida Constitution, which secures Floridians against unreasonable infringements on the right to privacy. *See id.* at ¶¶ 30–63. Plaintiffs seek a declaration that Ordinance 96–13 is invalid and unenforceable, a permanent injunction prohibiting the County and its agents, employees, or attorneys from enforcing Ordinance 96–13, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988. *See id.* at 49–50.

By its terms, Ordinance 96–13 was to become effective on March 16, 1996. *See* Ordinance 96–13, § 7. Before these cases were removed to federal court, however, a state court entered a preliminary injunction enjoining the County from enforcing the Ordinance. *See* Order Vacating Stay, June 17, 1998, at 5. Defendant appealed this Court's decision not to dissolve that injunction. *See id.* In an unpublished decision entered November 17, 1998, the Eleventh Circuit Court of Appeals held that, because the Parties had stipulated to the state court's entry of the preliminary injunction and had not moved this Court to withdraw that stipulation, the injunction remained in force. *See University Books v. Miami–Dade County,* No. 97–4101, 1998

---

front counter is located or to a main aisle so that a person located in the front room or main aisle is able to view any person or persons located in any viewing rooms in order to monitor compliance with this ordinance.
*Id.* at § 2(4)(d)(i).

**5.** Specifically, the Ordinance provides that an owner/operator of an adult bookstore or adult

video store "shall not provide or knowingly allow to exist any holes in any walls of any booths, cubicles, toilet stalls, rooms or other areas at an adult bookstore or adult video store which the owner or operator knew or should have known are used for the purposes of sexual activity between persons occupying adjoining booths, cubicles, rooms, toilet stalls or other areas." Ordinance 96–13, § 2(4)(b).

WL 819870 (11th Cir. Nov. 17, 1998). As such, since the County has been unable to enforce Ordinance 96–13 in the three years since its enactment, Plaintiffs have yet to suffer any deprivation of their rights of free speech and privacy.

In their Motion For Summary Judgment, Plaintiffs argue that they are entitled to judgment as a matter of law for several reasons. First, Plaintiffs contend that Ordinance 96–13 is unconstitutionally overbroad in that it applies by its terms to any business offering any material that is harmful to minors, rather than to only those establishments whose businesses offer a substantial proportion of such material. *See* Pls.' Mot., at 3–10. Plaintiffs suggest that this overbreadth transforms the Ordinance from a content-neutral time, place, and manner regulation into a content-based regulation of protected speech, which presumptively violates the First Amendment. *See id.* Second. Plaintiffs maintain that Ordinance 96–13 violates the First Amendment because it is not narrowly tailored to achieve its stated purpose of curbing the spread of sexually-transmitted diseases. *See id.* at 11–17. Third, Plaintiffs state that the Ordinance must be declared unconstitutional because the County failed to make any legislative findings that would support its broadly-sweeping action. *See id.* at 17–20. Finally, Plaintiffs argue that, by imposing penalties—up to and including the potential closure of establishments found to have violated its terms—under a strict liability scheme, Ordinance 96–13 violates due process and unconstitutionally chills speech protected by the First Amendment. *See id.* at 20–25.

Defendant County does not dispute Plaintiffs' characterization that no genuine issue of material exists such that summary judgment is proper. However, in its Cross–Motion For Summary Judgment, Defendant County maintains that it is entitled to judgment as a matter of law because Ordinance 96–13 passes constitutional muster. First, Defendant County construes Ordinance 96–13 as a content-neutral time, place, and manner regulation that is constitutional under the Supreme Court's First Amendment jurisprudence, given that it serves a substantial government interest, is narrowly tailored to serve that interest, and leaves open ample alternative avenues of communication. *See* Def.'s Cross–Mot., at 4–8, 14–15. Second, Defendant County reasons that, read as a whole and with common understanding, Ordinance 96–13 applies only to establishments that have the adverse secondary effects sought to be controlled; in other words, Defendant County disputes Plaintiffs' contention that the Ordinance is unconstitutionally overbroad. *See id.* at 8–14. Third, Defendant County suggests that, prior to enacting Ordinance 96–13, the Board made the requisite legislative findings Plaintiffs suggest are lacking. *See id.* at 18. Fourth, Defendant County cites various cases in support of its position that the strict liability provisions of Ordinance 96–13 neither violate due process nor create an unconstitutional chilling effect. *See id.* at 18–20. Finally, Defendant County expounds upon the right to privacy claim, which Plaintiffs fail to address in their Motion For Summary Judgment. After reviewing state law on the right to privacy, Defendant County asserts that Plaintiffs cannot establish a violation of Article 4, section 23 of the Florida Constitution for the public sexual activity proscribed by Ordinance 96–13. *See id.* at 16–17.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56© (West 1998); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exists. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then the Court should refuse to grant summary judgment. *See id.* at 919. However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

## III. Analysis

In analyzing the Parties' Motions, the Court must determine whether Plaintiffs or Defendant is entitled to judgment as a matter of law with respect to each of Plaintiffs' three claims for relief. The Court will address first Plaintiffs' claim for relief under 42 U.S.C. § 1983 for violation of the First and Fourteenth Amendments, then Plaintiffs' claim for relief under Article 1, section 4 of the Florida Constitution, and finally Plaintiffs' claim for relief under Article 1, section 23 of the Florida Constitution.

### A. *Plaintiffs' Claim for Relief under 42 U.S.C. § 1983*

In their Motion For Summary Judgment, Plaintiffs assert that Ordinance 96–13 unconstitutionally infringes upon their First Amendment rights on three distinct, but related, grounds. First, they argue that the Ordinance is substantially overbroad in that it applies to businesses that cannot possibly cause the deleterious secondary effects allegedly caused by adult bookstores and adult video stores. *See* Pls.' Mot., at 3–11. Second, they maintain that Ordinance 96–13 cannot survive scrutiny under the Supreme Court's First Amendment jurisprudence. As part of this second argument, Plaintiffs make the specific contentions that the Board failed to make the necessary legislative findings and that the Ordinance is not narrowly tailored to serve its stated purpose. *See id.* at 11–20. Finally, Plaintiffs object on due process and free speech grounds to the strict liability provisions of the Ordinance. *See id.* at 20–25. The Court will address each of these three positions separately to determine which of the Parties is entitled to summary judgment on Plaintiffs' first claim for relief.

### 1. *Substantial Overbreadth*

The First Amendment overbreadth doctrine allows a party whose speech is prohibited by a government regulation to bring a facial challenge to the regulation on the ground that it threatens other parties who engage in the protected expression, but who may refrain from doing so rather than risk prosecution or challenge the law. *See Board of Airport Comm'rs of the City of Los Angeles v. Jews for Jesus*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987), *citing Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). A government regulation that proscribes protected speech may be invalidated on its face only if the overbreadth is "substantial." *See id., citing Houston v. Hill*, 482 U.S. 451, 458–59, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). In other words, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). The Supreme Court has cautioned against zealous application of the overbreadth doctrine, noting that it is "manifestly, strong medicine." *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

In their Motion For Summary Judgment, Plaintiffs argue that Ordinance 96–13 sweeps within its ambit far more speech than is necessary to fulfill its stated pur-

pose of curbing the spread of sexually-transmitted diseases. Specifically, Plaintiffs aver that the Ordinance's definitions of "adult bookstore" and "adult video store" are broad enough to include businesses that offer a very limited amount of material that may qualify as harmful to minors, such as movie theaters playing an R-rated film or convenience stores selling adult magazines such as *Playboy*. *See* Pls.' Mot., at 5–11. Far beyond the common understanding of these terms, Plaintiffs state that the definitions employed by the County inadvertently extend the application of Ordinance 96–13 to mainstream businesses that do not have any of the adverse secondary effects sought to be addressed by the Ordinance. *See id.* As such, Plaintiffs contend that Ordinance 96–13 is substantially overbroad, and should be declared facially unconstitutional by this Court.

In its Cross–Motion For Summary Judgment, Defendant County combats Plaintiffs' overbreadth challenge to Ordinance 96–13. First, Defendant County questions Plaintiffs' standing to assert an overbreadth claim, given that they expressly concede in their Complaint that the Ordinance applies to them. *See* Def.'s Cross–Mot., at 13 n. 8, *citing Movie & Video World, Inc. v. Board of County Comm'rs of Palm Beach County, Fla.*, 723 F.Supp. 695, 702 (S.D.Fla.1989) ("As to definitions of adult bookstore, adult entertainment establishment, and adult material, the court finds that the Plaintiffs lack standing to challenge these as being vague and overbreadth because they have, in fact, admitted that these same definitions are applicable to their establishments in this case."). Second, Defendant County maintains that, read as a whole and in conjunction with Chapter 847 of the Florida Statutes to which the Ordinance expressly refers, Ordinance 96–13 does not apply to mainstream businesses in which sexual activity likely does not occur. *See id.* at 10, *citing Berg v. Health & Hosp. Corp. of Marion County, Ind.*, 865 F.2d 797, 805 (7th Cir.1989) ("Read as a whole, the ordinance and its regulations plainly

are directed at those establishments which provide individual booths where high-risk sexual activity may occur and to businesses that offer as part of their business the entertainment to be viewed within the enclosure."). Finally, Defendant County invokes common sense in support of its position, reasoning that the terms "adult bookstore" and "adult video store" obviously refer to establishments such as those operated by Plaintiffs, not general-audience movie theaters or convenience stores. *See id.* Defendant County concludes that, for these three reasons, Ordinance 96–13 is not substantially overbroad.

Ordinance 96–13 defines "adult bookstore" as "a business engaged in displaying, distributing, bartering, renting or selling printed matter, pictures, films, graphic or other materials *which activity requires the exclusion of minors pursuant to Chapter 847, Florida Statutes.*" Ordinance 96–13, § 2(2)(a) (emphasis added). "Adult video store" is similarly defined as "a business engaged in displaying, renting or selling videotapes *which activity requires the exclusion of minors pursuant to Chapter 847, Florida Statutes.*" *Id.* at § 2(2)(b). Chapter 847 of the Florida Statutes prohibits the dissemination of material that is "harmful to minors," which—tracking language fashioned by the Supreme Court—is defined as follows:

"[T]hat quality of any description, exhibition, presentation, or representation, in whatever form, of nudity, sexual conduct, or sexual excitement when it (a) predominantly appeals to the prurient, shameful, or morbid interest *of minors;* (b) is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material *for minors;* and (c) taken as a whole, is without serious literary, artistic, political, or scientific value *for minors.*"

Fla. Statutes Ann. § 847.011(3) (West 1998) (emphasis added). The Court must analyze Plaintiffs' overbreadth challenge to

Ordinance 96–13 in light of these three definitions.

■■■ The Court concludes that Ordinance 96–13 is not substantially overbroad as a matter of law. In making this finding, the Court expressly rejects Defendant's claim that Plaintiffs lack standing to bring their overbreadth challenge because they concede that the Ordinance applies to them. Since the very purpose of the overbreadth doctrine is to allow a party to bring a facial challenge to a government regulation where other parties may refrain from engaging in protected speech, it would be absurd to suggest that the Plaintiffs in this case could not bring their overbreadth challenge on behalf of other establishments that may be affected by Ordinance 96–13. As to the merits of their overbreadth claim, however, the Court must rule against Plaintiffs. First, the Court notes that Chapter 847 of the Florida Statutes has been held to pass muster under the First Amendment. *See State v. Long,* 544 So.2d 219, 220–21 (Fla. Dist.Ct.App.1989). Since the definitions which Plaintiffs argue are overbroad hinge almost exclusively on Chapter 847—the remaining parts of the definitions focus on the words "book," "video," and "store," terms of common understanding to which Plaintiffs presumably cannot object-this finding of constitutionality is extremely persuasive. Plaintiffs concern that Defendant County may seek to enforce Ordinance 96–13 against general-audience movie theaters and convenience stores, while perhaps legitimate, seems far-reaching for a number of reasons. Although sexual activity, especially as it is broadly defined in the Ordinance, may occur in such mainstream businesses, it likely does not occur with as much frequency as it does in closed viewing rooms in which individuals are watching sexually explicit films. Moreover, the regulatory provisions governing such viewing rooms clearly would not apply to mainstream businesses that arguably fit into the definition of adult bookstore or adult video store, precisely because such businesses do not have viewing rooms. When read as a whole, the

terms of Ordinance 96–13 clearly applies only to adult bookstores and adult video stores, meaning establishments such as Plaintiffs that are in the business of selling sexually explicit material. In light of the high standard enunciated by the Supreme Court for a successful overbreadth challenge, the Court concludes that Plaintiffs have not established that Ordinance 96–13 is substantially overbroad. As such, the Court must deny Plaintiffs' Motion For Summary Judgment to the extent that it is premised on the First Amendment overbreadth doctrine.

### 2. *Scrutiny under Supreme Court First Amendment Jurisprudence*

■■■ The First Amendment protects non-obscene, sexually explicit speech. *See Sable Communications of Cal., Inc. v. FCC.,* 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989). Courts subject content-based restrictions on protected speech-those that "suppress. disadvantage, or impose differential burdens upon speech because of its content"-to "the most exacting scrutiny." *Turner Broad. Sys., Inc. v. FCC,* 512 U.S. 622, 642, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). In contrast, content-neutral regulations of protected speech are subject to intermediate scrutiny. *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288. 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). To determine whether a given regulation that potentially limits speech is· content-based or content-neutral, courts look primarily to the respective government's purpose in enacting the regulation; if the government sought to address the adverse secondary effects of the protected speech, rather than the speech itself, the government's pursuit of its interests is unrelated to the suppression of free expression, and thus the ordinance is a content-neutral speech regulation. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

In their Motion For Summary Judgment, Plaintiffs attempt to characterize

Ordinance 96–13 as a content-based regulation of protected speech. Based on their belief that the Ordinance applies to mainstream businesses that do not have the adverse secondary effects sought to be addressed by the County, Plaintiffs argue that Ordinance 96–13 is content-based.[6] *See* Pls.' Mot., at 11–12. Plaintiffs also imply that, although by its terms the Ordinance was enacted to curb the spread of sexually-transmitted diseases, the Board's actual purpose was to eradicate sexually explicit speech from the County. *See id.* at 15 n. 4. Plaintiffs glean this ulterior motive from the fact that Ordinance 96–13 was enacted with Ordinance 96–12, a zoning ordinance that limited the unincorporated areas in the County where adult entertainment establishments legally could operate.[7]

Defendant County disagrees with Plaintiffs' characterization of Ordinance 96–13 as content-based. Defendant County argues that the Ordinance expressly is aimed at controlling the deleterious secondary effects—namely, the spread of sexually-transmitted diseases—thought to be caused by the occurrence of sexual activity in adult bookstores and adult video stores. *See* Def.'s Cross–Mot., at 6, *citing International Food & Bev. Sys. v. City of Fort Lauderdale,* 794 F.2d 1520, 1525 (11th Cir. 1986). Defendant County therefore maintains that Ordinance 96–13 does not inhibit the expression of sexually explicit speech, and thus is not presumptively unconstitutional as a content-based restriction on speech. *See id.*

■ The Court finds that Ordinance 96–13 is a time, place, and manner restriction on sexually explicit, non-obscene speech. In the preamble to the Ordinance, the Board explicates its desire to curb the spread of HIV, AIDS, and other sexually-transmitted diseases that threaten the public health, safety, and welfare. To this end, the Board enacted Ordinance 96–13 to prohibit sexual activity in adult bookstores and adult video stores. Notably, nowhere in the Ordinance or before this Court does the County justify its action with reference to the content of the regulated speech. In fact, counter to Plaintiffs' assertion, Ordinance 96–13 standing alone would not unduly infringe on the rights of either patrons to access such speech or owners/operators to provide such speech. The Ordinance does not prohibit the viewing of sexually explicit material in adult bookstores and adult video stores. Instead, the Ordinance dictates the manner in which such material must be viewed; namely, in a well-lit, open room with no holes in its walls by a viewer seated in a single-person chair. However, onerous Plaintiffs may feel these regulations are, they certainly have not demonstrated that they are content-based. As such, the Court must deny Plaintiffs' Motion For Summary Judgment to the extent that it rests on a characterization of Ordinance 96–13 as a content-based regulation, and grant Defendant's Cross–Motion For Summary Judgment to the extent that it rests on a characterization of Ordinance 96–13 as a content-neutral regulation.

■ A content-neutral time, place, and manner restriction of protected speech must (1) serve a substantial government interest, (2) be narrowly tailored to serve that interest, and (3) leave open ample alternative channels of communication. *See Renton,* 475 U.S. at 50–52, 106 S.Ct. 925; *see also Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105

---

**6.** Plaintiffs essentially exploit the same argument twice, once in support of their overbreadth challenge and once to convince this Court to subject the Ordinance to heightened scrutiny.

**7.** In an Order entered January 19, 1999, this Court granted Plaintiffs' Motion For Preliminary Injunction, enjoining Defendant County from enforcing Ordinance 96–12 on the ground that Plaintiffs were likely to succeed on the merits of their claim that the Ordinance violated the First Amendment. After the Board amended the Ordinance on April 13, 1999, the Parties represented to the Court that Part I of the Complaint, challenging Ordinance 96–12, was moot. As such, in an order dated April 23, 1999, this Court dismissed Part I of the Complaint.

L.Ed.2d 661 (1989). Given its finding that Ordinance 96–13 is content-neutral, the Court must analyze whether it passes constitutional muster by satisfying these three requirements.

### a. Substantial government interest

▮ Plaintiffs contend that the County failed to adduce any legislative findings to support their belief that adult bookstores and adult video stores create a public health danger. *See* Pls.' Mot., at 17. Plaintiffs criticize the Board for taking action based only on vague references to evidence in other cities, thereby promulgating a regulation infringing upon protected speech on the basis of conclusory statements of causation. *See id., citing N.W. Enters., Inc. v. City of Houston,* 27 F.Supp.2d 754, 776 (1998) (holding that a court reviewing such an action must consider "whether the . . . Council relied on evidence in the legislative record from which it could have reasonably determined that negative secondary effects . . . actually exist"). Plaintiffs present the studies relied upon by the Board in enacting Ordinances 96–12 and 96–13, which they interpret as only presenting analyses of the adverse secondary effects caused by the zoning of adult entertainment establishments. *See id.* at Ex. 5. Plaintiffs suggest that nothing in these studies indicate that sexual activity occurs in adult bookstores and adult video stores, or that such activity leads to the spread of sexually-transmitted diseases. *See id.* at 19. Not only do Plaintiffs chastise the Board for failing to gather such evidence, Plaintiffs also maintain that there likely is little support for the belief that such stores are thriving centers for the transmission of sexually-transmitted diseases. *See id.* at 20.

Defendant County rejects what it views as the unduly rigorous evidentiary findings Plaintiffs suggest the Board was required to make before enacting Ordinance 96–13. Defendant County maintains that, based on the evidence before it, the Board reasonably could have concluded that enactment of the Ordinance would help curb the spread of sexually-transmitted diseases. *See* Def.'s Cross–Mot., at 18, *citing Renton,* 475 U.S. at 51–52, 106 S.Ct. 925 ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem . . . ."). Specifically, Defendant County alleges that it enacted Ordinance 96–13 in light of the fact that Metropolitan Dade County has one of the highest incidences of HIV and AIDS in the nation, the studies undertaken in other areas, and the correlation between adult bookstores and adult video stores and the spread of sexually-transmitted diseases demonstrated by the County Commissioners of Palm Beach County and found to have been constitutionally sufficient in *Movie & Video World,* 723 F.Supp. 695. *See id.* Furthermore, Defendant County cites a litany of cases in which courts have upheld similar ordinances against constitutional challenges such as the one brought by Plaintiffs;[8] Defendant County presum-

---

8. In addition to various district court cases, including one in the Southern District of Florida, Defendant cites various appellate decisions upholding government regulations in the face of constitutional attack. *See* Def.'s Cross–Mot., at 5–6 n. 2, *citing Mitchell v. Commission on Adult Entertainment Establishments of Del.,* 10 F.3d 123, 139–44 (3d Cir.1993) (regulation imposing open booth requirements with express purpose to prevent high risk sexual conduct), *Bamon Corp. v. City of Dayton,* 923 F.2d 470, 471 (6th Cir.1991) (ordinance requiring viewing booths to be well-lit, unobscured, and without holes in walls); *Postscript Enters. v. City of Bridgeton,* 905 F.2d 223, 227 (8th Cir.1990) (ordinance prohibiting doors or curtains on viewing booths); *Doe v. City of Minneapolis,* 898 F.2d 612, 616 (8th Cir.1990) (ordinance enacted to curb spread of AIDS, prohibiting holes in partitions designed to allow sexual activity and requiring booths to be open and lighted); *Berg v. Health & Hosp. Corp. of Marion County, Ind.,* 865 F.2d 797, 801 (7th Cir.1989) (ordinance designed to combat spread of AIDS by prohibiting partitions in buildings that have apertures designed to allow sexual activity and requiring viewing rooms to have one side open to adjacent public room); *FW/PBS Inc. v. City of Dallas,* 837 F.2d 1298,

ably intends to imply that the Board made its decision with full knowledge of these cases, and reasonably relied on the experiences in those areas to support its conclusion that the possibility of sexual activity in adult bookstores and adult video stores creates the danger of spreading sexually-transmitted diseases. *See id., citing International Food & Bev. Sys.*, 794 F.2d at 1526–27 (holding that a local government need not wait to experience "actual deleterious effects before it can regulate," provided that there exists some reasonable basis for its action).

The Court finds that the County had sufficient evidence before it to conclude that enactment of Ordinance 96–13 could help curb the spread of sexually-transmitted diseases. In making this determination, however, the Court agrees with Plaintiffs that the studies allegedly relied on by the Board primarily, and arguably exclusively, deal with the issue of zoning adult entertainment establishments. The Court also finds troubling the Board's implicit assumption that sexual activity is rampant in adult bookstores and adult video stores. Moreover, assuming such activity does occur, the Court is not convinced that such activity leads to the spread of sexually-transmitted diseases—a conclusion fraught with serious questions of risk and probability, given the modes through which such diseases are transmitted—any more than sexual activity occurring in businesses such as nightclubs, massage parlors, or hotels. Nevertheless, the Court concludes that the Board could reasonably have relied on the evidence cited in other cities and counties, which has been deemed constitutionally sufficient in the cases challenging regulations similar to Ordinance 96–13. In light of the existing studies, the Board need not have undertaken the exhaustive process of making legislative findings anew; given that neither the existence of adult bookstores and adult video stores nor the problem of sexually-transmitted diseases is unique to the County, its

reliance on the causal link between the two established elsewhere was reasonable. As such, the Court must deny Plaintiffs' Motion For Summary Judgment to the extent that it argues that Ordinance 96–13 should be declared unconstitutional for the Board's failure to make sufficient legislative findings.

The issue that remains is whether the County enacted Ordinance 96–13 to serve a substantial government interest. The County enacted the Ordinance in an effort to protect the public health of its residents by curbing the spread of HIV, AIDS, and other sexually-transmitted diseases. *See* Ordinance 96–13, preamble. In their Motion For Summary Judgment, Plaintiffs concede that, assuming this was its purpose, the County sought to advance "an important—even compelling rationale." Pls.' Mot., at 15. The Court agrees that curbing the spread of sexually-transmitted diseases to ensure the health and welfare of residents is a substantial government interest. As such, it finds that Ordinance 96–13 satisfies the first part of the test for validity as a content-neutral time, place, and manner restriction of protected speech.

b. Narrowly tailored to serve substantial government interest

■■■■ A restriction on speech is narrowly tailored if its effect on First Amendment freedoms is essential to further the substantial government interest that causes the incidental interference with free speech rights. *See United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Where a content-based regulation is involved, the means chosen should be the least restrictive. *See Rock Against Racism*, 491 U.S. at 796–98, 109 S.Ct. 2746. However, in order to satisfy the requirement of narrow tailoring, a content-neutral regulation that infringes on protected speech need only serve a substantial government interest that would

1304 (5th Cir.1988) (ordinance requiring booths to be open); and *Ellwest Stereo Theatres Inc. v. Wenner*, 681 F.2d 1243, 1246–47

(9th Cir.1982) (ordinance requiring viewing areas to be visible from main aisle and unobstructed by enclosures).

be less likely to be advanced absent the regulation. *See id.* at 799, 109 S.Ct. 2746. In other words, the means employed by the government in its time, place, and manner restriction must not be substantially broader than necessary to achieve the government's interest. *See id.* However, such a regulation is not invalid merely because the reviewing court concludes that the government could serve the interest by some less speech-restrictive alternative. *See id.* Ultimately, the court must accord appropriate deference to the government's judgment on the appropriate manner in which to deal with the adverse secondary effects created by protected speech. *See id.* ("The validity of [these] regulations does not turn on a judge's agreement with the responsible decision maker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted.").

■ Plaintiffs argue that Ordinance 96–13 is not narrowly tailored to serve the substantial government interest of curbing the spread of sexually-transmitted diseases. First, Plaintiffs aver that the Ordinance's specifications as to lighting and the configuration of viewing rooms likely are not necessary to prevent sexual activity from occurring in adult bookstores and adult video stores. *See* Pl.'s Mot., at 12. Second, Plaintiffs criticize the Ordinance's imposition of liability for sexual activity such as fondling and masturbation, which they maintain does not pose the danger of transmission of sexually-transmitted diseases. *See id.* at 15. Finally, Plaintiffs assail the Ordinance once more in its potential application to mainstream businesses wherein sexual activity is not likely to occur, citing their understanding that the ordinances which have passed constitutional muster elsewhere defined adult bookstores and adult video stores as places where a defined percentage or a preponderance of the material sold is sexually explicit. *See* Pls.' Reply, at 11–12 n. 11. Given these alleged failings, Plaintiffs contend that they are entitled to judgment as a matter of law that Ordinance 96–13 burdens substantially more speech than necessary such that it fails to satisfy the narrowly tailored requirement.

In its Cross–Motion For Summary Judgment, Defendant County maintains that Ordinance 96–13 satisfies the narrowly tailored requirement. First, Defendant County asserts that the Court should give appropriate deference to the Board's choice in serving its substantial government interest of curbing the spread of sexually-transmitted diseases. *See* Def.'s Cross–Mot., at 14. Defendant County proffers that it would less effectively be able to achieve its goal of stemming the spread of sexually-transmitted diseases absent Ordinance 96–13. *See id.* at 15. Most important, Defendant County posits that the fact that numerous other federal courts have upheld statutes, regulations, and ordinances similar to Ordinance 96–13 is highly persuasive evidence that the Ordinance is narrowly tailored to serve its substantial government interest. *See id.* at 15 n. 13.

The Court agrees with Defendant County that Ordinance 96–13 satisfies the narrowly tailored requirement. In so doing, the Court does not necessarily disagree with Plaintiffs' statements as to the significant sweep with which Ordinance 96–13 attempts to curb the spread of sexually-transmitted diseases in the County. However, the Court ultimately is guided in its decision by the dictates of the narrowly tailored standard as it has developed with respect to content-neutral time, place, and manner restrictions such as the Ordinance. Although the County certainly could have fashioned an ordinance that has a less restrictive incidental effect on Plaintiffs' free speech rights, Ordinance 96–13 certainly promotes a substantial government interest that would be achieved less effectively absent the regulation. The Court does not abdicate its judicial role by blindly deferring to the Board's conclusion on the manner in which to achieve its public health goals, rather the Court finds that the Ordinance is not *substantially* broader

than necessary to achieve the government's substantial interest. While Ordinance 96–13 may not be tailored in the most narrow manner possible, it certainly is sufficiently narrowly tailored to pass constitutional muster.

### c. Ample alternative channels of communication

■ The Supreme Court has held that "a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Taxpayers for Vincent,* 466 U.S. at 812, 104 S.Ct. 2118. Therefore, content-neutral time, place and manner restrictions on protected speech must leave open ample alternative channels of communication. *See Renton,* 475 U.S. at 50, 106 S.Ct. 925.

In their Motion For Summary Judgment, Plaintiffs fail to address whether Ordinance 96–13 leaves them with alternative avenues of communicating sexually explicit, non-obscene speech. In its Cross–Motion, however, Defendant addresses the issue squarely, recognizing that the Ordinance in no way bans the viewing of adult-oriented films. *See* Def.'s Cross–Mot., at 7–8. Because Ordinance 96–13 merely regulates the environment in which the viewing occurs, Defendant argues that Plaintiffs have ample alternative channels to communicate their constitutionally-protected speech.

■ The Court agrees with Defendant County that Ordinance 96–13 leaves open ample alternative channels of communication. Nothing in the Ordinance prevents the owners/operators of adult bookstores and adult video stores from providing, or their patrons from viewing, sexually explicit videos in the stores' viewing rooms. Furthermore, no restrictions are placed on the number of such rooms that may be available, or what and how much may be viewed in them. By regulating the seating, lighting, and configuration of viewing rooms, Ordinance 96–13 neither bans nor limits Plaintiffs' exercise of their free speech rights; instead, the Ordinance only regulates the manner in which the owners/operators and patrons of adult book-

stores and adult video stores access sexually explicit material when they choose to do so in a public viewing room. The Court therefore concludes that the Ordinance leaves open ample alternative channels of communication. As such, the Court finds that Ordinance 96–13 satisfies the third part of the test for validity as a time, place, and manner restriction of protected speech.

■ Because it satisfies all three requirements for a content-neutral time, place and manner restriction of protected speech, the Court concludes that Plaintiffs have failed to establish that Ordinance 96–13 cannot pass constitutional scrutiny under the Supreme Court's First Amendment jurisprudence. As such, the Court must deny Plaintiffs' Motion For Summary Judgment to the extent that it is premised on the arguments that the Ordinance was neither based on sufficient legislative findings nor is narrowly tailored to serve a substantial governmental interest. To the extent that it rests on the theory that Ordinance 96–13 passes constitutional muster under the Supreme Court's First Amendment jurisprudence, Defendant's Cross Motion For Summary Judgment must be granted.

### 3. *Imposition of penalties on strict liability basis*

■ Plaintiffs strongly oppose the penalty provisions of Ordinance 96–13, which they contend create an unconstitutional chilling effect and violate due process. Plaintiffs view the lack of any scienter element in the Ordinance as infringing upon their right to engage in sexually explicit, non-obscene speech. *See* Pls.' Mot., at 21, *citing Smith v. California,* 361 U.S. 147, 151, 153–54, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959) (holding that imposing strict liability for obscenity offense would have collateral effect of inhibiting freedom of expression by making individuals more reluctant to exercise it). Indeed Plaintiffs suggest that the Constitution requires proof of scienter to avoid self-censorship of

constitutionally protected material. *See id.* at 22, *citing Mishkin v. New York,* 383 U.S. 502, 511, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966). To the extent that Ordinance 96–13 would chill the expression of protected speech, Plaintiffs argue that the Ordinance would wrongly reduce the adult population to viewing only what is suitable for minors. *See id.* at 21. Plaintiffs also impliedly address the manner in which the Ordinance's strict liability provisions violate due process. In essence, they decry the fact that, under their broad reading of Ordinance 96–13, a mainstream movie theater "would face closure under an injunction issued pursuant to § 2(7) of the ordinance, for three instances of young movie patrons 'fondling' each other, regardless of the theater operator's lack of knowledge— or even best efforts to prevent—such conduct." *Id.* at 15. Because it contains strict liability penalty provisions that allegedly chill speech and violate due process, Plaintiffs maintain that Ordinance 96–13 is unconstitutional under the First Amendment.

In its Cross–Motion For Summary Judgment, Defendant County reasserts its position that Ordinance 96–13 does not violate the First Amendment because it does not ban any expressive activity. *See* Def.'s Cross–Mot., at 18. Defendant County seems to imply that the precedents relied upon by Plaintiffs are irrelevant to the case at hand, in which the restriction on protected speech is a content-neutral time, place, and manner restriction. Since Plaintiffs may continue to engage in sexually explicit, non-obscene speech, Defendant County reasons that no such speech would be unconstitutionally chilled. *See Movie & Video World,* 723 F.Supp. at 700, *citing Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243, 1247 (9th Cir.1982) (holding that chilling effect argument requires factual basis upon which to conclude that First Amendment freedom of speech would be thwarted). With respect to the due process issue, Defendant County notes that the only criminal penalty in Ordinance 96–13 authorizes imprisonment for "providing or knowingly allowing to exist holes in interior walls that are used for sexual activity between persons in adjoining rooms." Ordinance 96–13, § 2(6)(b). Since the only authorized criminal sanction contains a scienter element, Defendant County argues that the Ordinance satisfies due process requirements.

The Court concludes that Plaintiffs have failed to establish as a matter of law that the strict liability penalty provisions of Ordinance 96–13 chill protected speech or violate due process. Ordinance 96–13 indeed holds the owner/operator of and adult bookstore or adult video store liable for the occurrence of sexual activity in their store "whether or not the owner or operator has knowledge of the occurrence." *See* Ordinance 96–13, § 2(3)(b). Standing alone, the Court agrees that this provision may go too far in aiming to ensure that sexual activity does not occur in adult bookstores and adult video stores. However, reading the Ordinance as a whole— including its prohibitions, regulations, and penalty provisions—the Court cannot say that protected speech would be chilled or that due process would be violated. With respect to Plaintiffs' concern that constitutionally protected speech may be chilled, the Court refers to its prior analysis in which it determined that the Ordinance leaves open alternative channels of communication. There, the Court found that Ordinance 96–13 did not limit or ban the expression of sexually explicit, non-obscene speech at all; consequently, the imposition of strict liability penalties for violations of time, place, and manner regulations cannot be said to chill protected speech. As for Plaintiffs' due process concerns, the Court concludes that the strict liability provisions of Ordinance 96–13, while perhaps severe, do not rise to the level of deprivations of due process. First, the Court agrees with Defendant County that the criminal penalty provision, which has the potential to lead to imprisonment, does have a scienter element such that due process is satisfied. Second, the provision declaring an adult bookstores or adult video stores that violates Ordinance 96–13 to be a public nui-

sance does not close such a store mandatorily, rather it provides that it "shall *be subject to* an injunction closing the facility." Ordinance 96–13 § 2(7). Since the Board would have to take further action prior to issuing an injunction depriving the owner/operator of a violating adult bookstore or adult video store of his property right, the owner/operator would have to be afforded the due process protections of a hearing on the action. By its terms, the Court finds that Ordinance 96–13 does not unconstitutionally chill protected speech or violate due process. As such, Plaintiffs' Motion For Summary Judgment on this ground must be denied.

The Court finds that Ordinance 96–13 does not violate Plaintiffs' rights under the First Amendment in any of the ways put forth by Plaintiffs. As such, the Court denies Plaintiffs' Motion For Summary Judgment as to Plaintiffs' first claim for relief under 42 U.S.C. § 1983, and enters judgment as a matter of law on said claim in favor of Defendant County.

B. *Plaintiffs' Claim for Relief under Article I, § 4 of the Florida Constitution*

 Article I, section 4 of the Florida Constitution provides, in relevant part, that "[n]o law shall be passed to restrain or abridge the liberty of speech or of the press." Fla. Const. art. I, § 23. Florida courts consistently have interpreted this provision as affording the same protection against infringements on the freedom of speech as does the First Amendment to the United States Constitution. *See State v. Globe Communications Corp.*, 622 So.2d 1066, 1075 (Fla.Dist.Ct.App.1993), *citing In Re Advisory Opinion to the Governor*, 509 So.2d 292, 302 n. 2 (Fla.1987); *Department of Educ. v. Lewis*, 416 So.2d 455, 461 (Fla.1982); *Florida Canners Ass'n v. State of Fla., Dep't of Citrus*, 371 So.2d 503, 517 (Fla.Dist.Ct.App.1979), *aff'd*, 406 So.2d 1079 (Fla.1981). Given that the scope of the two provisions are the same, a content-neutral time, place, and manner restriction which passes constitutional muster under the First Amendment also must survive scrutiny under Article I, section 4 of the Florida Constitution.

In Part III.A, this Court concluded that Ordinance 96–13 does not violate Plaintiffs' First Amendment rights on any of the theories advanced by Plaintiffs. Accordingly, the Court entered judgment as a matter of law in favor of Defendant County on Plaintiffs' claim for relief pursuant to 42 U.S.C. § 1983. Since the scope of Florida's constitutional guarantee of freedom of speech is the same as the First Amendment's, the Court finds that Ordinance 96–13 does not violate Plaintiffs' rights under Article I, section 4 of the Florida Constitution. As such, the Court denies Plaintiffs' Motion For Summary Judgment as to Plaintiffs' second claim for relief, and enters judgment as a matter of law on said claim in favor of Defendant County.

C. *Plaintiffs' Claim for Relief under Article I, § 23 of the Florida Constitution*

 Article I, § 23 of the Florida Constitution provides, in pertinent part, that "[e]very natural person has the right to be left alone and free from governmental intrusion into private life except as otherwise provided herein." Fla. Const. art I, § 23. Florida courts have interpreted this provision as affording greater protection than the right to privacy read into the United States Constitution. *See Berkeley v. Eisen*, 699 So.2d 789, 790 (Fla. Dist.Ct.App.1997). Before the right to privacy attaches, a plaintiff must have a "reasonable expectation of privacy." *See Winfield v. Division of Pari–Mutuel Wagering, Dep't of Bus. Regulation*, 477 So.2d 544, 547 (Fla.1985). Once a plaintiff has shown that the government has intruded upon his right of privacy, the government must show that the challenged regulation serves a compelling state interest through the least intrusive means. *See Pottinger v. City of Miami*, 810 F.Supp. 1551, 1573 (S.D.Fla.1992); *see also Shapiro v. State* 696 So.2d 1321, 1326 (Fla.Dist. Ct.App.1997).

In their Complaint, Plaintiffs do not allege that Ordinance 96–13 violates their right to privacy by infringing on their right to watch sexually explicit, non-obscene materials in public viewing rooms. Indeed Plaintiffs would be hard-pressed to make such an argument, either under federal or Florida law. *See Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65–67, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (holding that the constitutionally protected right to watch such films at home—granted in *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969)—did not import a similar right to watch such films in a public place); *see also Stall v. State of Fla.,* 570 So.2d 257 (Fla.1990) ("Although one may possess obscene material in one's home, there is no legitimate reasonable expectation of privacy in being able to patronize retail establishments for the purpose of purchasing such material."). Plaintiffs allegation is that, by severely limiting and/or eliminating the operation of adult book stores in the County, Ordinance 96–13.C infringes on the adult public's right to view non obscene, sexually-oriented materials at home. *See* Part II of Compl., at ¶¶ 52–55.

In their Motion For Summary Judgment, Plaintiffs do not address this third claim for relief. In its Cross–Motion, although Defendant County addresses Plaintiffs' right to privacy claim, it fails correctly to understand Plaintiffs' allegation. Rather than focus on the right to view sexually explicit, non-obscene material at home, Defendant County concentrates exclusively on the lack of federal and state protection for viewing such material in public or engaging in public sexual activity. *See* Def.'s Cross–Mot., at 16–17.

The Court concludes that Ordinance 96–13 does not infringe on the right of adults to view sexually explicit, non-obscene material at home. As this Court repeatedly has found above. Ordinance 96–13 in no way limits or bans sexually explicit films; as a content-neutral time, place, and manner restriction regulating the viewing of such films in adult bookstores and adult video stores, the Ordinance has absolutely no obvious effect on the ability of adults to view such films at home. Plaintiffs' suggestion that Ordinance 96–13 severely limits or eliminates the operation of such stores in the County is similarly misguided. The Ordinance in of itself does nothing to eliminate adult bookstores or adult video stores, rather it mandates that they comply with a list of regulations or face *potential* closure. Plaintiffs have not, nor is it likely that they could, demonstrated a tangible effect Ordinance 96–13 would have on the right of adults to view sexually explicit, non-obscene material at home. The Court therefore finds that Ordinance 96–13 does not violate Plaintiffs' rights under Article 1, section 23 of the Florida Constitution. As such, the Court denies Plaintiffs' Motion For Summary Judgment as to Plaintiffs' third claim for relief, and enters judgment as a matter of law on said claim in favor of Defendant County

## IV. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiffs' Motion For Summary Judgment Concerning Part II of the Complaint be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that Defendant's Cross–Motion For Summary Judgment be, and the same is hereby, GRANTED. Final judgment on Part II of the Complaint is hereby ENTERED in favor of Defendant Metropolitan Dade County and against the Plaintiffs in the above-styled matters [University Books and Videos, Inc.; 14907 SN Corp.; Bird Street Corp.; DBJ Enterprises, Inc.; Miami Factor, Inc.; Perrine Adult Book and Video, Inc.; Bird Road Book and Video; 7351 XZ, Inc.; Mr. Oliver, Inc.; 11711 Book and Video Corp.; 2316 Corp.; Gold Coast Book & Video, Inc.; 167th Street Corp.; Sun Beach Videos, Inc.; Kendall Book and Video, Inc.]. It is further

ORDERED and ADJUDGED that the above-styled matter, Part I of which previously was denied as moot and Part II of which has been ruled upon herein, be, and the same is hereby. CLOSED.

DONE and ORDERED in chambers at the lames Lawrence King Federal Justice Building and United States District Courthouse, Miami, Florida, this 27th day of August, 1999.