Patricia MACLEAN, Plaintiff,

v.

CITY OF ST. PETERSBURG, Defendant.

No. 8:00CV613T17EAJ.

United States District Court, M.D. Florida, Tampa Division.

March 18, 2002.

James A. Sheehan, James A. Sheehan, P.A., St. Petersburg, FL, for Patricia K. MacLean, plaintiffs.

Ernest Mueller, City Attorney's Office, City Of St. Petersburg, St. Petersburg, FL, Thomas M. Gonzalez, Erin Adele Gremillion, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for City of St. Petersburg, defendants.

## ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Defendant's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. No. 26); and Plaintiff's Memorandum of Law in Support of Plaintiff's Reply to Defendant's Motion for Summary Judgment (Dkt. No. 31).

### Background

Patricia MacLean (Plaintiff) began employment with the City of St. Petersburg

(Defendant) Police Department (SPPD) on May 20, 1985. In 1990, SPPD transferred her to the position of civilian investigator. On February 1, 1999, the Police Department Pension Board (Pension Board) called Plaintiff to testify on behalf of Karen Lea (Lea), a sergeant under whom Plaintiff formerly worked, at a disability retirement hearing to determine whether Lea was entitled to service-connected disability benefits. At the hearing, Plaintiff testified that Lea was "targeted" for mistreatment and that Plaintiff feared retaliation from testifying at the hearing because friends and supporters of Lea also were being retaliated against. Plaintiff did not testify that she witnessed or opposed any form of sexual harassment or any other unlawful discrimination.

After the hearing, Plaintiff requested overtime pay for the time that she testified before the board. However, Defendant refused to pay her, and Plaintiff filed a grievance. Upon guidance from the City Labor Relations Office, Sergeant Katie Connor–Dubina informed Plaintiff that she was not entitled to compensation for testifying at the hearing. Following the denial of her request for overtime pay, Plaintiff submitted a memorandum to Chief of Police Goliath Davis (Chief Davis), in which Plaintiff expressed discontent with her previous supervisors and spoke of "harassment." When he received the memorandum, Chief Davis overruled Sergeant Connor–Dubina's denial of payment to Plaintiff and agreed that Plaintiff should be compensated for the time that she spent testifying at Lea's hearing. He also requested that the police department's Internal Affairs Bureau (IA) interview Plaintiff regarding the concerns that she conveyed in her memorandum.

In the IA interview, Plaintiff expressed that "everything was fine" and that she did not have a claim for harassment. Feeling that the problem was not resolved, Chief Davis and IA asked Plaintiff to give a follow-up statement, thereby allowing Plaintiff another opportunity to voice her concerns. Plaintiff stated that she was discriminated against because of "a personal thing with certain people," but did not express concern that the discrimination was based on race or gender. As a result of the interview, IA investigator Ray Waldo determined that the situation did not merit further investigation.

On April 7, 1999, the same day as her follow-up interview with IA, Plaintiff's supervisor, Sergeant Hope Crews, informed Plaintiff that she would be given additional duties because one of her coworkers, Joe Cillian, would have to report to active military duty in the near future. The following day, Plaintiff submitted a letter of resignation, stating that her resignation would be effective April 22, 1999 and that she would be using vacation time up until that point. On April 16, 1999, Plaintiff attempted to rescind her resignation. However, Chief Davis would not accept her rescission because other people in the department had informed him regarding Plaintiff's complaints about her workload and continued threats to quit, the department had accepted her resignation, and Plaintiff had already been "processed out" of the system.[1] Plaintiff was informed of this decision on April 19, 1999.

Plaintiff filed suit in the Circuit Court for the Sixth Judicial Circuit in and for Pinellas County, Florida on March 1, 2000, which subsequently was removed to this Court. In her complaint, Plaintiff alleges that Defendant retaliated against her in

---

1. City Rule 5–15 gives the Department director complete discretion as to whether the rescission of a resignation will be allowed.

violation of Title VII of the Civil Rights Act of 1964, as amended, Title 42, United States Code, Section 2000e, *et seq.* and the Florida Civil Rights Act of 1992, Florida Statutes, Section 760.01, *et seq.;* and that Defendant violated her constitutional rights under the First and Fourteenth Amendments of the United States Constitution in violation of Title 42, United States Code, Section 1983 and Article One, Section Four of the Florida Constitution, as it relates to free speech. Additionally, Plaintiff has alleged causes of action for wrongful discharge in violation of the Family and Medical Leave Act (FMLA), Title 29, United States Code, Section 6211. Finally, Plaintiff requests that the Court enter a declaratory judgment stating that she was "constructively discharged," that Defendant did not have a right to refuse rescission of her resignation, and/or that Defendant denied her of due process when it refused to allow her to appeal the loss of her job.

Defendant now moves for summary judgment on the grounds that Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII and the Florida Civil Rights Act; that Plaintiff's speech was not a matter of public concern and, therefore, not protected under the First Amendment; that the Pension Board hearing was not a "judicial proceeding" for the purposes of Florida Statutes, Section 92.57; that Plaintiff has no evidence to support her claims under the FMLA; and that the Court does not have jurisdiction to enter a declaratory judgment against Defendant in this instance.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the non-moving party's case." *Id.* at 323, 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Natl. Bank of Mt. Pleasant,* 595 F.2d 994, 996–997 (5th Cir.1979).

The court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.*

### Discussion

**I. Retaliation Claim**

Plaintiff alleges that she was retaliated against in violation of Title VII and the

Florida Civil Rights Act for testifying before the Pension Board and participating in the IA investigation. Defendant argues that Plaintiff was not retaliated against because she voluntarily resigned from her employment; therefore, there can be no adverse employment action. However, Plaintiff contends that she was constructively discharged because Defendant made her working conditions so intolerable, as a result of her participation in statutorily-protected activity, that a reasonable person would be forced to resign voluntarily.

## A. Title VII

■ To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity that Title VII protects; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000) (citing *Farley v. Nationwide Mutual Ins.*, 197 F.3d 1322, 1336 (11th Cir.1999)).

■ Once the plaintiff has established a *prima facie* case of retaliation, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Raney v. Vinson Guard Serv.*, 120 F.3d 1192, 1197 (11th Cir.1997) (quoting *Hairston v. Gainesville Sun Publg. Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). If the defendant proffers legitimate reasons, the presumption of retaliation is rebutted and drops from the case. At the summary judgment stage, "the burden then shifts back to the plaintiff to raise a genuine factual issue as to whether the defendant's proffered reason is a pretextual ruse to mask a retaliatory action." *Id.* (citing *Hairston*, 9 F.3d at 921).

## 1. Protected Activity

Title VII recognizes two forms of statutorily-protected conduct. An employee is protected from retaliation and discrimination if (1) "[she] has opposed any practice made an unlawful employment practice by this subchapter" (the opposition clause) or (2) "[she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter" (the participation clause). 42 U.S.C. § 2000e–3(a). Plaintiff conceded that she is unable to maintain a cognizable claim under the opposition clause of Title VII. However, Plaintiff alleges that, under the participation clause of Title VII, she was engaged in statutorily-protected activity when she testified before the Pension Board and when she participated in the IA investigation. Defendant argues that these are not protected activities under Title VII.

Plaintiff relies on the Eleventh Circuit's decision in *Clover v. Total System Services, Incorporated* to argue that her participation in the Pension Board hearing and her interview with IA are protected activities for the purposes of Title VII. In *Clover*, the Court held that, although "investigation" under Section 2000e–3(a) is not defined in the statute, "at, a minimum, the term encompasses EEOC investigations of alleged unlawful discrimination." 176 F.3d 1346, 1352–1353 (11th Cir.1999) (citing 42 U.S.C. § 2000e–5(b)). The Eleventh Circuit found that an employer's indirect means of gathering evidence to investigate a charge of discrimination was on equal footing with any evidence that the EEOC gathered in its own investigation. *Id.* at 1353. As such, "an employee who participates in the employer's process of gathering such information is participating, in some manner, in the EEOC investigation." *Id.*

1298

■ Plaintiff argues that testifying on behalf of Lea was a protected activity under Title VII. However, unlike *Clover*, Defendant was not gathering information for the purposes of the EEOC complaint that Lea filed; rather, the Pension Board hearing had nothing to do with Lea's EEOC charges and Defendant did not testify to any matters that would be relevant to Lea's EEOC claims. Moreover, the IA investigation was a result of the police chief's concerns for Plaintiff's expressed dissatisfaction, it was not used as a means to gather information for a pending EEOC claim. Therefore, the Court finds *Clover* unpersuasive as it pertains to Plaintiff's claims.

However, the Court does agree with Plaintiff under the Eleventh Circuit's decision in *EEOC v. Total System Services, Incorporated*, 240 F.3d 899 (11th Cir.2001). In *Total System*, the court held that "Title VII's participation clause *must* cover internal investigations, even in the absence of an EEOC notice of charge of discrimination. To hold otherwise would defeat the purpose of the participation clause and expose employees to a significant risk of retaliation." *Id.* at 903 (emphasis added). Therefore, the Court finds that Plaintiff's testimony before the Pension Board and her participation in the IA investigation are statutorily-protected activities for the purposes of Title VII.

### 2. Adverse Employment Action

■ An adverse employment action is "an ultimate employment decision, such as a discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta*, 212 F.3d at 587 (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997)). To determine whether there is sufficient action to constitute adverse employment action, the court must look at each claim on a case-by-case basis, using a subjective and an objective standard. *Id.* (citing *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999)). In this Circuit, an employee must show a serious and material change in the terms, conditions, or privileges of employment, and the employee's subjective view of the significance of the employer's action is not controlling; rather, the employment action must be materially adverse to a reasonable person under the circumstances. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir.2001) (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir.1998)).

Plaintiff alleges that the initial denial of overtime pay; the increase in her workload; and Defendant's failure to acknowledge Plaintiff's attempted rescission of her resignation qualify as adverse employment action. Conversely, Defendant argues that none of these instances constitute adverse employment action under Title VII. The Court agrees with Defendant.

■ First, the initial denial of overtime pay does not amount to adverse employment action under Title VII, particularly when looking at the fact that the denial was overturned, and Plaintiff received the pay that she requested. A reasonable person under the circumstances would not expect to be paid by his or her employer to testify when he or she was in fact testifying against her employer. Moreover, "the protections of Title VII simply do not extend to 'everything that makes an employee unhappy.'" *Id.* at 1242 (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997)). Finally, Plaintiff's "compensation, terms, conditions or privileges of employment" were not materially or seriously altered as a result of the denial. In fact, they were not changed at all. Regardless of the fact

that the overtime pay was not usual compensation as part of her employment, ultimately, she did receive the payment. Therefore, the Court finds that the initial denial of overtime pay for her testimony before the Pension Board was not an adverse employment action in retaliation for Plaintiff's testimony at the hearing.

 Similarly, in looking at Plaintiff's increased workload, "Title VII ... [is not] a statute making actionable the 'ordinary tribulations of the workplace.'" *Id.* at 587 (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (citation omitted)). Sergeant Crews asked Plaintiff to perform additional duties as a result of a coworker's future absence for military duty. A reasonable person in the same circumstances would expect to bear additional responsibilities, if a coworker was unavailable to continue in his or her position. Increased workloads are an "ordinary tribulation of the workplace" for which employees should expect to take responsibility. In addressing the issue of whether unfair work assignments are adverse employment actions for the purposes of Title VII, the Eleventh Circuit stated that,

> [w]ork assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets .... The same concern exists for public entities ... which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public.

*Davis,* 245 F.3d at 1244. Likewise, this Court will not infringe on the business judgment of Defendant. This Court's place is not to determine the workload that employers should place on its employees. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (stating that the purpose of Title VII is not to make federal courts "sit as a super-personnel department that reexamines an entity's business decision"). Therefore, the Court finds that the additional workload placed on Plaintiff was not an adverse employment action in retaliation for Plaintiff's participation in the pension board hearing or in the IA investigation.

Finally, Defendant argues that its failure to allow Plaintiff to rescind her resignation was not adverse employment action because the resignation was voluntary. Plaintiff asserts that, although she resigned, she was constructively discharged because Defendant made her working conditions so intolerable that a reasonable person would be forced to resign involuntarily. Plaintiff bases this claim on Defendant's failure to provide her with an Internet connection for over a year and a half and because, immediately following her testimony at the Pension Board hearing, she was told that her workload would increase.

 Employee resignations are presumed to be voluntary; however, this Circuit recognizes two circumstances under which an employee's resignation will be deemed involuntary: (1) where the employer forces the resignation by coercion or duress; or (2) where the employer obtains the resignation by deceiving or misrepresenting a material fact to the employee. *Hargray v. City of Hallandale,* 57 F.3d 1560, 1568 (11th Cir.1995) ( citing *Schultz v. U.S. Navy,* 810 F.2d 1133, 1135–1137 (Fed.Cir.1987); and *Scharf v. Dept. of the Air Force,* 710 F.2d 1572, 1574 (Fed. Cir.1983)). The Court finds that neither of these circumstances are present in the case at hand.

 In determining whether coercion or duress played a part in the employee's resignation, the Court must look at the totality of the circumstances and take the following factors into consideration:

**1300**

(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice [she] was given; (3) whether the employee was given reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Id.* at 1568 (citing *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir.1988)). However, "the mere fact that the choice is between comparably unpleasant alternatives ... does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary." *Id.* (quoting *Stone*, 855 F.2d at 174). Specifically, where an employee resigns because he or she is faced with an unpleasant alternative, the resignation is still voluntary because "the fact remains that [P]laintiff *had a choice.* [Plaintiff] could stand pat and fight." *Id.* (quoting *Christie v. U.S.*, 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975)) (emphasis in original).

 An employee has the responsibility to act reasonably before choosing to resign, and then labeling that resignation as a constructive discharge. *Matthews v. City of Gulfport*, 72 F.Supp.2d 1328, 1338 (M.D.Fla.1999) (citing *Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir.1987)). "Part of acting reasonably is notifying the employer of improper behavior, and affording the employer an opportunity to correct it." *Id.* Here, Plaintiff resigned one day after she was told that she would have perform additional duties, *in the future,* while one of her coworkers went on military duty for six months. A reasonable person in Plaintiff's position would not resign merely because she was told that she would have to assume additional responsibilities; this is not a circumstance where Defendant's conduct could be seen to deprive Plaintiff of free will in choosing whether to resign.

 The Court finds that Plaintiff's resignation was voluntary and was not a result of coercion or duress. The Court will not address the second circumstance in which a resignation can be found to be involuntary because there are no allegations that Defendant misrepresented a material fact that would induce Plaintiff's resignation. Therefore, the Court finds that Plaintiff was not constructively discharged. Finally, because the acceptance of Plaintiff's resignation was within the discretion of Chief Davis, the Court finds that the failure to accept Plaintiff's rescission of her voluntary resignation was not adverse employment action in retaliation for Plaintiff's testimony at the Pension Board hearing.

### 3. Causal Connection

 To establish a causal connection between Plaintiff's participation in a protected activity and Defendant's adverse employment action, Plaintiff must show that the "decision-maker[s] [were] aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." *Gupta*, 212 F.3d at 578 (quoting *Farley*, 197 F.3d at 1337 (citation, internal marks, and emphasis omitted)). For the purposes of a *prima facie* case, "close temporal proximity" may be sufficient to show that the protected activity and the adverse action were not "wholly unrelated." *Id.* (citing *Farley*, 197 F.3d at 1337). However, because the Court finds that Defendant did not take adverse employment action against Plaintiff, it follows that there can be no causal connection between the protected activity and the employment action.

Because Plaintiff has failed to establish a *prima facie* case of retaliation, there are no genuine issues of material fact in dispute, and Defendant is entitled to judgment as a matter of law as to Count II of Plaintiff's complaint.

### B. Florida Civil Rights Act

Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act because the Florida Act was patterned after Title VII. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.1998) (citing *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 S.2d 1005, 1009 (Fla.1989); and *Florida State Univ. v. Sondel*, 685 So.2d 923 (Fla. Dist App.1996)). "No Florida court has interpreted the [Florida Civil Rights Act] to impose substantive liability where Title VII does not." *Id.* Therefore, for the same reason that the complaint fails to state a retaliation claim under Title VII, it also fails to state a retaliation claim under the Florida Civil Rights Act. Defendant's Motion for Summary Judgment must be granted as to Count IV.

## II. Retaliatory Discharge

### A. Section 1983

▮ To assert a cause of action under Title 42, United States Code, Section 1983, the specific constitutional deprivation must be identified. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Plaintiff asserts a cause of action against Defendant under Section 1983 for violations of her under the First and Fourteenth Amendment constitutional rights. Specifically, Plaintiff alleges that Defendant, while acting under the color of state law, violated her First Amendment right to free speech because it retaliated against her when she testified before the Pension Board and when she participated in the IA investigation.

▮ The First Amendment protects government employees from some, but not all, restraints on their free expression. *Beckwith v. City of Daytona Beach*, 58 F.3d 1554, 1562 (11th Cir.1995). This Circuit examines First Amendment retaliatory discharge claims under the four-part test announced in *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir.1989). *Id.* Under the *Bryson* test, the court analyzes (1) whether the employee's speech involves a matter of public concern; (2) whether the employees's interest in speaking outweighs the government's legitimate interest in efficient public service; (3) whether the speech played a substantial part in the government's challenged employment decision; and (4) whether the government would have made the same employment decision in the absence of the protected conduct. *Id.* (citing *Bryson*, 888 F.2d at 1565–1566). The first two elements of the *Bryson* test are questions of law designed to determine whether the First Amendment protects the employee's speech. *Id.* at 1564. The third and fourth elements are questions of fact designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision. *Id.*

### *Was Employee's Speech a Matter of Public Concern?*

▮ Whether speech is a matter of public concern is a question of law. *Gonzalez v. Lee County Hous. Auth.*, 161 F.3d 1290, 1297 (11th Cir.1998). To involve a matter of public concern, a government employee's speech "must relat[e] to any matter of political, social, or other concern to the community." *Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir.2000) (quoting *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). "If the government employee speaks 'not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision by a public agency allegedly in reaction to the employee's behavior.'" *Id.* (quoting *Connick* 461 U.S. at 147, 103 S.Ct. 1684). Therefore, the Court must determine whether Plain-

tiff spoke primarily as a citizen on behalf of the public or primarily as an employee upon matters of personal interest. *Id.* (citing *Connick,* 461 U.S. at 147–148, 103 S.Ct. 1684). Whether an employee's speech is public or private may be determined by examining the "content, form, and context of a given statement as revealed by the whole record." *Id.* (quoting *Connick,* 461 U.S. at 147–148, 103 S.Ct. 1684). Here, the speech at issue is Plaintiff's testimony before the Pension Board and her statements in the IA investigation.

The Court finds that the case at hand is similar to the Eleventh Circuit's decision in *Morgan v. Ford.* In *Morgan,* the plaintiff, a state department of corrections employee, claimed that she was retaliated against for complaining about sexual harassment by her supervisor. 6 F.3d 750, 752 (11th Cir.1993). One of the plaintiff's coworkers filed a complaint against their mutual supervisor and identified the plaintiff as a corroborating witness. *Id.* at 752. As a result, the department superintendent requested a meeting with the plaintiff. During that meeting, the plaintiff told the superintendent about the supervisor's behavior towards her and her coworker. *Id.* The plaintiff subsequently filed her own sexual harassment charges against her supervisor, first with the department's internal affairs division and then with the state office of fair employment practices. *Id.* at 752–753. The plaintiff argued that her complaints of sexual harassment constituted speech on a matter of public concern because they related to "a matter of vital social interest." *Id.* at 754.

Although the Eleventh Circuit agreed that workplace sexual harassment was a matter of important social interest, the court explained that "the mere fact that the topic of the employee's speech was one in which the public might or would have a great interest is of little moment." *Id.* (citations omitted). The court emphasized

that the relevant inquiry was "whether the purpose of [the plaintiff's] speech was to raise issues of public concern ... or to further her own private interest." *Id.* Because the plaintiff's speech focused on her supervisor's behavior and its effect on her work; did not, in any way, draw "the public at large or concerns into the picture;" and "was driven by her own entirely rational self-interest in improving the conditions of her employment," the Eleventh Circuit found that the plaintiff's speech was not a matter of public concern. *Id.*

██ Like the plaintiff in *Morgan* was a corroborating witness against her supervisor, Plaintiff also was a corroborating witness in a hearing against her employer. Additionally, like the plaintiff's meeting with her superintendent in *Morgan,* here, Plaintiff participated in a meeting with the IA, where she expressed dissatisfaction about her work environment and the alleged harassment that she experienced. For the same reasons that the Eleventh Circuit determined that the plaintiff's speech was not a public concern in *Morgan,* this Court also finds that, in the case at hand, Plaintiff's speech is not a matter of public concern. Although Plaintiff's testimony at the hearing and her participation in the IA investigation involved matters of social interest, Plaintiff's speech did not "raise issues of public concern;" rather, her speech was to "further her own private interest." Therefore, the Court finds that Plaintiff's speech was not a matter of public concern and was not protected speech under the First Amendment.

Because the Plaintiff's speech was not protected speech under the First Amendment, the Defendant is entitled to judgment as a matter of law for Count III.

## B. Florida Constitution—Article One, Section Four

Plaintiff alleges that Defendant violated her rights under Article One, Section Four

of the Florida Constitution. Article One, Section Four provides, in relevant part, that, "[n]o law shall be passed to restrain or abridge the liberty of speech or the press." Fla. Const. art. I, § 4. Florida courts consistently have interpreted this provision as affording the same protection against infringements on the freedom of speech as does the First Amendment to the United States Constitution. *University Books & Videos, Inc. v. Metropolitan Dade County*, 78 F.Supp.2d 1327, 1342 (S.D.Fla.1999) (citing *State v. Globe Communications Corp.*, 622 S.2d 1066, 1075 (Fla.App.4 Dist.1993) (citing *In re Advisory Opinion to the Gov.*, 509 S.2d 292, 302 n. 2 (Fla.1987))). Because the scope of Florida's constitutional guarantee of freedom of speech is the same as the First Amendment's guarantee of free speech, the Court finds that Plaintiff's speech was not protected under Article One, Section Four of the Florida Constitution for the same reasons that Plaintiff's speech was not protected speech under the First Amendment, and Defendant is entitled to judgment as a matter of law for Count IV.

### III. Wrongful Discharge

#### A. FMLA

Plaintiff claims that Defendant violated the FMLA because it failed to allow her to rescind her resignation after she was approved for FMLA leave. The FMLA grants eligible employees that right to "12 workweeks of leave during any 12–month period .... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). To protect and enforce these rights, the FMLA creates two types of claims: interference claims and retaliation claims. *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir.2001).

To establish a retaliation claim under the FMLA, an employee must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. *Id.* As discussed above, the Court finds that the failure to allow Plaintiff to rescind her resignation was not adverse employment action; therefore, Plaintiff's retaliation claim under the FMLA must fail.

On the other hand, to state a claim of interference under the FMLA, an employee need only demonstrate, by a preponderance of the evidence, that she was entitled to the benefit denied. *Id.* (citing *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–1354 (11th Cir. 2000)). Plaintiff argues that she was entitled to "reinstatement" under the FMLA after she resigned. The Court does not agree. Plaintiff voluntarily resigned, and Chief Davis had complete discretion as to whether to accept her resignation or allow her to rescind it. After talking to other employees and learning of Plaintiff's continued threats to quit and complaints about her workload, Chief Davis decided that the resignation was appropriate. Therefore, the Court finds that Defendant did not deny Plaintiff "reinstatement" on the basis that she was eligible under the FMLA, and Defendant is entitled to judgment as a matter of law as to Count VI.

#### B. Florida Statutes Section 92.57

Section 92.57 provides:

A person who testifies in a judicial proceeding in response to a subpoena may not be dismissed from employment because of the nature of the person's testimony or because of absences from employment resulting from compliance with the subpoena.

Fla. Stat. § 92.57. Based on the foregoing discussion that Plaintiff voluntarily re-

signed and was not constructively discharged, the Court finds that Plaintiff was not dismissed as a result of her testimony. Therefore, Plaintiff cannot assert a cause of action under Section 92.57, and Defendant is entitled to judgment as a matter of law for Count VII.

## IV Declaratory Judgment

 The Declaratory Judgment Act, Title 28, United States Code, Section 2201 provides, in pertinent part,

In a case of actual controversy, within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relation of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The Declaratory Judgment Act "does not enlarge the jurisdiction of federal courts but rather 'is operative only in respect to controversies which are such in the constitutional sense .... Thus the operation of the Declaratory Judgment Act is procedural only.' " *Wendy's Intl., Inc. v. City of Birmingham,* 868 F.2d 433, 435 (11th Cir.1989) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). A party seeking declaratory relief must satisfy the constitutional limitation of the judicial power to cases and controversies. *Id.* (citing U.S. Const. art III, § 2, cl. 1). As the Supreme Court explained,

The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under

all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

Defendant argues that the Court does not have jurisdiction to enter a declaratory judgment on the issues that Plaintiff requests. Plaintiff asserts that although jurisdiction may have been proper in state court, Plaintiff originally filed suit in state court, and Defendant had the claim removed to federal court. Therefore, Defendant cannot now argue that jurisdiction is improper.

 The Court finds that there is not a proper controversy in this case to warrant declaratory judgment. Plaintiff requests that the Court declare that she was constructively discharged, but, because the Court finds that Plaintiff was not constructively discharged, Plaintiffs' request for declaratory judgment must be denied as to that issue. Additionally, Plaintiff requests this Court to declare that the failure to allow Plaintiff to rescind her resignation was improper; however, the Court finds that Defendant acted properly in accepting Plaintiff's resignation. Therefore, declaratory judgment as to this issue also is improper. Finally, Plaintiff requests that this Court declare that Defendant denied her due process by refusing to allow her to appeal the loss of her job. Again, as stated above, the Court finds that Plaintiff voluntarily resigned; therefore, she was not denied due process to appeal the loss of her job, and declaratory judgment on this issue is improper. Therefore, Defendant must be granted judgment as a matter of law as to Count I.

Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 26) be **GRANTED.** The Clerk of the Court shall enter a final judgment for Defendant.