**Flunni Carmen McGUIRE, Plaintiff,**

v.

**MIAMI–DADE COUNTY, Defendant.**

**No. 04–21402–CV.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 13, 2006.

---

Leslie P. Holland, North Miami Beach, FL, for Plaintiff.

Scott B. Mario, Dade County Attorney's Office, Miami, FL, for Defendant.

### ORDER GRANTING FINAL SUMMARY JUDGMENT

MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendant Miami–Dade County's Motion for Summary Judgment (D.E. No. 25), filed on *December 1, 2005*. Defendant's Motion has been fully briefed and is ripe for adjudication. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

### I. Relevant Factual and Procedural Background

Plaintiff Flunni Carmen McGuire is a Computer Technician II in Defendant Miami–Dade County's water and sewer department. Plaintiff filed suit against Defendant Miami–Dade County alleging violations of the Americans with Disabilities Act ("ADA")in Count I and violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") in Count II.[1] In Count I, McGuire alleges retaliation for filing a charge with the Equal Employment Opportunity Commission ("EEOC"). In Count II, McGuire alleges discrimination based on "a disability known as Meniere's disease, which impairs her balance and mobility and causes her to have seizures." (D.E. No. 1 at 2). Defendant has filed a Motion for Summary Judgment alleging McGuire has not established a *prima facie* case with respect to Count I or Count II.

### II. Legal Standard

Under Federal Rule of Civil Procedure 56(c), a Motion for Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court further explained the movant's burden in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. 2548. The Court further stated that "Rule 56(e) ... requires a non-moving party to go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

---

1. Plaintiff also alleged a violation of the Age Discrimination in Employment Act; however, the parties filed a Stipulation of Dismissal With Prejudice of Count III, ADEA Claim (D.E. No. 23) and this Court entered a Final Order of Dismissal With Prejudice as to Count III, ADEA Claim (D.E. No. 29).

(1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

### III. Analysis

#### A. Retaliation in Violation of Title VII

■ Defendant first argues that Plaintiff has failed to establish a prima facie case for retaliation under Title VII. "It is well established in this circuit that to successfully allege a prima facie retaliation claim under ... Title VII ... a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002). Defendant argues that Plaintiff has not established a prima facie case because there is no evidence she suffered an adverse employment action and because she has not shown a causal link between her protected activity and the alleged adverse actions. This Court finds all but one of the actions alleged by Plaintiff are not adverse employment actions and no causal link has been shown between any of the

alleged adverse employment actions and Plaintiff's filing of the EEOC charge.

#### 1. Adverse Employment Actions

■ The Eleventh Circuit has held that in order "to prove adverse employment action in a case under Title VII's antidiscrimination clause, an employee must show a *serious and material* change in the terms, conditions or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir.2001) (emphasis in original). Plaintiff has alleged that several different adverse employment actions were taken including: (1) that Defendant delayed the processing of her request for reclassification and she was threatened with demotion if she did not withdraw her request for reclassification; (2) that she was required to perform job duties that were excessive and beyond the scope of her position; (3) that her supervisors delayed her performance evaluation; (4) that she was denied requests to attend training; (5) that she received a Record of Counseling for going outside of the chain of command; and (6) that "[a]s recently as July 7, 2005, plaintiff's [sic] had to leave work and take a short term disability because her superiors refused her request for a location to a quieter work area." (D.E. No. 1 at 3); (D.E. No. 33 at 4–6). The Court finds that Plaintiff's allegation that she was threatened with demotion if she did not withdraw her request for reclassification is the only allegation that rises to the level of an adverse employment action.[2]

---

**2.** In her Response to Defendant's Motion for Summary Judgment, Plaintiff may also be arguing that her supervisor Deborah Viera once asked her what medications she was taking and this constituted an adverse employment action. This Court disagrees. Viera's question is not a serious and material change in

the terms, conditions and privileges of the Defendant. Furthermore, while Plaintiff has never stated this, even if Plaintiff were to argue that this is direct evidence of retaliation or even disability discrimination, this Court would disagree. First, the statement could

■ Viewing Plaintiff's allegation that she was threatened with demotion if she did not withdraw her request for reclassification[3] in the light most favorable to the Plaintiff, this Court finds that this allegation is sufficient to meet the prima facie requirement that Plaintiff demonstrate an adverse employment action taken against her. The Court finds a threat that interferes with Plaintiff's right to seek reclassification does deprive Plaintiff of an "employment opportunity." *See Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.' ") (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997)). However, this Court finds Plaintiff's characterization of Defendant's delay in processing the request for reclassification as an adverse employment action to be without merit. Plaintiff has not offered any evidence of how this delay caused her to suffer any tangible harm. Therefore, while the Court views the threat of demotion as an adverse employment action, it does not view the delay in processing this request as an adverse employment action.

■ Plaintiff next alleges that she has been required to perform job duties that were excessive and beyond the scope of her employment.[4] However, the Court finds that these are not serious and material changes in the terms, conditions or privileges of her employment. The Eleventh Circuit has stated that "[w]ork assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." *Davis*, 245 F.3d at 1244. For this reason, "courts have been reluctant to

3. not be retaliation as it was made before Plaintiff filed her EEOC complaint on June 20, 2003. *See* (D.E. No. 28, Depo. of Flunni Carmen McGuire at 125–26) (stating this conversation took place between April and May of 2003); (D.E. No. 27, Exhibit 33). *See also Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir.2003) ("An employer cannot retaliate if there is nothing for it to retaliate against."). Second, upon examination of McGuire's account of the exchange in her deposition, the alleged questioning of Plaintiff as to which medications she takes do not rise to the level of direct statements of discrimination. *See Carter v. City of Miami*, 870 F.2d 578, 581–82 (11th Cir.1989) ("Direct evidence of discrimination would be evidence which, if believed, would prove the existence of a fact without inference or presumption.")

3. Plaintiff states in a declaration filed with this Court:

Although I requested a reclassification in October 2003, by June 2004, the County had not acted upon this request. Around June 4, 2004, I withdrew my reclassification request after receiving pressure from my superiors, Wilson Ross and Boliver Rivera, to withdraw my reclassification request or face demotion. My superiors did not say that one consequence of a reclassification request *could* be that my position reclassified at a lower level. I was told that I *would* be demoted if I did not withdraw my reclassification request.

(D.E. No. 44 at 2–3) (emphasis in original).

4. McGuire has alleged that she was directed to update the back-up tapes for the Itron Server, that she was directed to assist the Geographical Information Systems (GIS) group by maintaining a particular database, performing necessary alterations to it and making "excessive entries in it," and that she was required to "work on the SNA project for the entire water and Sewer Department." (D.E. No. 44 at 2).

hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm" such as a reduction in salary. *Id.* This Court agrees and is unwilling to substitute its own judgment for that of the Defendant employer in relation to Plaintiff's work duties or workload. *See Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (stating "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988)). For the same reasons, increased workloads are not adverse employment actions but rather "an 'ordinary tribulation of the workplace' for which employees should expect to take responsibility." *MacLean v. City of St. Petersburg,* 194 F.Supp.2d 1290, 1299 (M.D.Fla.2002). *See also Lawrence v. Wal-Mart Stores, Inc.,* 236 F.Supp.2d 1314, 1334 (M.D.Fla.2002) (finding receipt of excessive work assignments did not constitute an adverse employment action). Therefore, this Court finds that Plaintiff's claims relating to her job duties and the scope of her employment are not adverse employment actions.

■ Plaintiff also argues that she suffered an adverse employment action because Defendant delayed completion of her performance evaluation. However, Plaintiff has failed to produce any evidence demonstrating how this delay in completing her performance evaluation resulted in a serious and material change in her condi-

tions or privileges of employment.[5] This delay alone is not an adverse employment action. *See, e.g., Taylor v. Small,* 350 F.3d 1286, 1293 (D.C.Cir.2003) ("We therefore conclude that neither Taylor's placement in the PIP nor the delay of her performance evaluations was an adverse employment action upon which Taylor may base a claim of discrimination."). The Court also notes that the overall rating of this delayed evaluation was satisfactory and Plaintiff received a five-percent merit increase in connection with this evaluation. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 147–48).

■ The next adverse employment action Plaintiff alleges is that she was denied the opportunity to attend "e-government training" and GIS training. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 167). However, Plaintiff has not introduced any evidence that the denial of this training caused any tangible harm. *See, e.g., Madiedo v. Miami–Dade County,* Case No. 99–1422, 2000 WL 1763845, *4 (S.D.Fla. June 1, 2000) ("Generally, denial of training that does not cause the denial of a promotion, bonus, or other benefit does not constitute adverse employment action."); *Bullock v. Widnall,* 953 F.Supp. 1461, 1473 (M.D.Ala.1996) (stating "the court is unable to conclude that the denial of training was an adverse employment action and finds that Bullock has failed to establish a prima facie case with regard to CESMARS course."). Therefore, this Court does not find the denial of training to be an adverse employment action.[6]

---

**5.** In her Complaint, Plaintiff states that "Plaintiff's superiors also delayed plaintiff's performance evaluation for five months, knowing that this delay could only adversely impact plaintiff receiving her reclassification." However, as already discussed, any delay in processing her reclassification is not an adverse employment action. Plaintiff's

statement that the delay could only adversely impact her is conclusory and as Plaintiff has failed to demonstrate any tangible harm from the delay.

**6.** Furthermore, Plaintiff concedes that she was permitted to attend GIS training in 2005. (D.E. No. 33 at 4 n. 3).

■ Plaintiff also alleges that receiving a Record of Counseling was an adverse employment action. Once again, Plaintiff has failed to offer any evidence as to how the issuance of the Record of Counseling adversely affected her. On its face, the Record of Counseling is clearly a warning and not a disciplinary action in and of itself as it states "be advised that *future* incidents of this nature or violations of the Miami–Dade County Personnel Rules can result in disciplinary action being initiated against you." (D.E. No. 27, Exhibit 31) (emphasis added). Plaintiff testified at her deposition that she did not receive any type of suspension in connection with the Record of Counseling, she was not demoted for the Record of Counseling, and her pay was also not decreased because of the Record of Counseling. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 123). As the Eleventh Circuit has stated "courts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." Therefore, the Court does not find the issuance of the Record of Counseling to have been an adverse employment action.

■ Finally, it appears Plaintiff is alleging that Defendant's refusal of her request to relocate to a quieter work area was an adverse employment action. However, this appears to be a failure to accommodate claim rather than an allegation of an adverse employment action. An allegation that an employer has failed to accommodate is not in and of itself an allegation of an adverse employment action. Defendant's refusal to relocate Plaintiff is not a serious and material change in the terms, conditions or privileges of Plaintiff's employment. Therefore, the Court finds the only action Plaintiff has alleged which could be classified as an adverse employment action is Plaintiff's allegation that she withdrew her reclassification request because she was threatened with demotion. However, the Court finds that Plaintiff has failed to create a genuine issue of material fact that there was a causal link between this action and any of the other alleged adverse employment actions and her filing of a complaint with the EEOC.

**2. Causal Link Between Protected Activity and Adverse Actions**

■ "To establish a causal connection, a plaintiff must show that 'the decision-maker[s] [were] aware of the protected conduct,' and 'that the protected activity and the adverse action were not wholly unrelated.'" *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir.2000) (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir.1999)). Plaintiff has not offered any evidence that the above described actions were not "wholly unrelated" to her filing of an EEOC claim.

■ Other than Plaintiff's own conclusory statements,[7] Plaintiff has not offered any evidence at all that the alleged

---

7. For example, Plaintiff sent an e-mail relating to her reclassification request on June 4, 2004, in which she states "[y]esterday you informed me that if I continue to seek a reclassification that I will be demoted from my current position. I believe that this is retaliatory to me for filing my recent EEOC charge of discrimination." (D.E. No. 27, Exhibit 39). This is a conclusory statement which does not create a genuine issue of material fact. *See Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000) (conclusory statements are not probative and do not create a genuine issue of material fact in a summary judgment context).

threat of demotion if she did not withdraw her reclassification claim is at all related to her filing of an E.E.O.C. complaint. Close temporal proximity can be enough to demonstrate a prima facie case of causal connection. *Id.* However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). There is not close temporal proximity between an alleged adverse action which took place in June of 2004 and her filing of her EEOC complaint which took place a year earlier in June of 2003. (D.E. No. 27, Exhibit 33).[8] A year is not close temporal proximity. *See, e.g., Wascura v. City of S. Miami,* 257 F.3d 1238, 1247 (11th Cir.2001) ("In light of the ample legitimate reasons for the termination decision proffered by the City, the truth of which was never effectively challenged, and in light of the fact that Wascura adduced virtually no evidence of discrimination, we cannot conclude that a reasonable jury could find for the Plaintiff based merely on the *three and one-half month temporal proximity* and the very weak inference from the Mayor's alleged comment that Wascura could use the illness as a face-saving excuse.") (emphasis added)*; Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (affirming district court's finding that the three month period between her termination and her protected activity was not enough in and of itself to demonstrate a causal connection); *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir.1992) (finding a three month period between protected activity and an alleged adverse action was not enough standing alone to demonstrate a causal connection).

This Court similarly finds Plaintiff has not offered any evidence of the link between the filing of her EEOC claim and the other alleged adverse actions and the temporal proximity between these actions is not enough. As stated above, Plaintiff filed her EEOC claim on June 20, 2003. (D.E. No. 27, Exhibit 33). Plaintiff's reclassification request was made on October 22, 2003, over four months after she filed her EEOC charge. (D.E. No. 27, Exhibit 37). As discussed above, this is not enough temporal proximity to demonstrate a causal relationship between the filing of her EEOC charge and the delay in processing her reclassification request. Next, there is also not sufficient temporal proximity between Plaintiff's allegations relating to the delay in her receiving a performance evaluation and the filing of her charge. The period of the evaluation was from October 28, 2002 until October 26, 2003. Therefore, at the earliest Plaintiff could have received a performance evaluation on October 27, 2003, which again is over four months after the filing of her charge. In addition, Plaintiff's leave of absence beginning on July 7, 2005 which she alleges she took after Defendants refused her relocation to a quieter work area occurred over two years after she filed her EEOC charge. Therefore, this action was also not in temporal proximity to her protected activity. McGuire has also stated that the tasks she is alleging were excessive and outside the scope of her duties

---

**8.** Plaintiff also filed EEOC charges in January 2004 and June 2004; however, Plaintiff has stated in her Response that "plaintiff is not claiming that these particular charges precipitated the treatment at issue in this case." (D.E. No. 33 at 4).

were assigned to her in September 2003, October 2003, and November 2003. (D.E. No. 44 at 2). These assignments are also not in temporal proximity to her filing of her EEOC charge. The Court also notes that Plaintiff has conceded that one of the alleged excessive tasks, the SNA project, was assigned to her in May 2003, before Plaintiff ever filed her EEOC charge. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 142). There is no causal link between actions that occurred before Plaintiff engaged in the protected activity. *See Durkin v. City of Chicago,* 341 F.3d 606, 615 (7th Cir.2003) ("An employer cannot retaliate if there is nothing for it to retaliate against."). Similarly, Plaintiff was denied training in March 2003[9] and received her Record of Counseling on May 28, 2003. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 167); (D.E. No. 27, Exhibit 31). Therefore, no causal link between these alleged adverse actions has been established, and this Court finds Plaintiff has failed to establish a prima facie case for retaliation. Thus, summary judgment is appropriate on Plaintiff's retaliation claim.

## B. Discrimination in Violation of the ADA

 Next, Defendant argues that Plaintiff has failed to establish a prima facie case for discrimination in violation of

the ADA. In order to allege an ADA claim, McGuire must be able to show that she has a disability as defined by the ADA. *See Carruthers v. BSA Adver., Inc.,* 357 F.3d 1213, 1215–16 (11th Cir.2004) ("In order for any ADA claim to succeed, the claimant must show that her condition of impairment rises to the level of a disability."). The ADA defines a disability as

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Plaintiff alleges that she has an actual impairment in that she suffers from Meniere's Disease. Plaintiff has stated in her Response to Defendant's Motion for Summary Judgment that Meniere's disease has substantially limited her ability to "balance, move, hear and work, all major life activities." (D.E. No. 33 at 7).[10] However, the Court finds that Plaintiff has not raised a genuine issue of material fact as to whether Meniere's disease has substantially limited any of these major life activities.

First, Plaintiff has alleged that Meniere's disease substantially limits her ability to move and balance. Plaintiff stated in her deposition that she suffers problems

---

9. The Court notes that Plaintiff was also denied GIS training sometime in 2003 (D.E. No. 28 Depo. of Flunni Carmen McGuire at 168); however, Plaintiff has not provided the Court with the month and day of this denial of training. The Court does not find this to be significant as it has already found that Plaintiff's denial of training was not an adverse employment action. The Court further notes Plaintiff carries the burden to demonstrate she has a prima facie case. *See Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432–

33 (11th Cir.1998) (citation omitted) ("Although a plaintiff's burden in proving a prima facie case is light, summary judgment against the plaintiff is appropriate if he fails to satisfy any one of the elements of a prima facie case.").

10. Plaintiff never stated in her complaint which major life activities her alleged disability substantially limited. *See* (D.E. No. 1).

with her mobility and "loss of balance, causing seizures." (D.E. No. 28, Depo. of Flunni Carmen McGuire at 107–8). Plaintiff also stated the following in relation to how Meniere's disease affects her functioning:

> I lose balance. I have to lay down. I am dizzy. I vomit a lot. Those are the attacks, but in general when I handle this condition, most of the time I'm dizzy and, at some point, noises start to bother me.

(D.E. No. 28, Depo. of Flunni Carmen McGuire at 186). Thus, McGuire's own testimony is that "most of the time" her Meniere's Disease just makes her dizzy and noises start to bother her.[11] Her testimony is that when she has attacks she loses balance and thus, this Court infers that this loss of balance interferes with her mobility. McGuire's testimony indicates that the impairment of her ability to move and balance is temporary. In order for a disability to be substantially limiting, the impairment must be permanent and long term. *See Toyota Motor Mfg., Kentucky Inc. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (stating "[t]he impairment's impact must also be permanent or long term."); *Rohan v. Networks Presentations,* 375 F.3d 266, 276 (4th Cir.2004) ("Intermittent manifestations of an illness are insufficient to establish a substantial limitation on a major life activity."). Therefore, this Court finds Plaintiff has not created a genuine issue of material fact that Meniere's disease substantially limits her ability to move and balance.

Next, Plaintiff alleges that Meniere's disease has substantially impaired her ability to hear. Hearing is recognized as a major life activity. 29 C.F.R. § 1630.2($l$) (stating that "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."). Plaintiff has stated that one effect of Meniere's Disease is that "at some point noises start to bother" her. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 186). She has also stated that she has a "sensitivity to surrounding noises, such as those from nearby telephone equipment and slamming doors." (D.E. No. 44 at 1–2). However, this evidence that Plaintiff is bothered by noises does not establish for the Court exactly how Plaintiff's hearing is affected or more importantly how the noises affect her overall ability to hear in comparison to that of the average person in the general population. *See* 29 C.F.R. § 1630.2($l$) (defining significantly impaired as "unable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."). It is also unclear whether these noises cause her permanent or temporary problems with her hearing.[12] Absent this evidence, McGuire has not created a genuine issue of material of fact as to whether Meniere's disease substantially limits her ability to hear.

Finally, Plaintiff alleges she is substantially limited in her ability to work. The

**11.** McGuire's sensitivity to noises is discussed at length in the next paragraph.

**12.** It appears that her hearing is only affected temporarily and as previously discussed, a temporary impairment is not substantially limiting. *See Williams,* 534 U.S. at 198, 122 S.Ct. 681 (stating "[t]he impairment's impact must also be permanent or long term.").

Eleventh Circuit Court of Appeals has previously recognized working as a major life activity. *See D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir.2005) ("D'Angelo says that her vertigo condition substantially impairs her ability to work, which we have consistently treated as a major life activity."); *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 & n. 2 (11th Cir.2004) ("The regulations implementing the ADA enumerate several functions that qualify as 'major life activities,' included among which is the activity of 'working.'") (citing 29 C.F.R. § 1630.2(*l*) (2003)).[13] The Supreme Court has stated "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). *See also D'Angelo*, 422 F.3d at 1227. Stated another way "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(I).

Plaintiff stated in her declaration filed with the Court that

> For several years, Meniere's disease has adversely affected my ability to work. During my employment in the Miami–Dade County Water and Sewer Department, I have often experienced difficulty performing my duties at certain work stations because of my sensitivity to surrounding noises, such as those from nearby telephone equipment and slamming doors.

(D.E. No. 44 at 1–2). These vague statements by Plaintiff are not enough to demonstrate a prima facie case that Meniere's Disease has substantially limited her ability to work. It is unclear what duties Plaintiff is referring to when she states she has "experienced difficulty performing ... [her] duties at certain work stations because of ... [her] sensitivity to surrounding noises." Plaintiff has given no indication that she would have difficulty performing a broad class of jobs; rather, Plaintiff specifically alleges that she has trouble performing certain unspecified "duties at certain [unspecified] work stations" where she works now. Furthermore, as discussed above, the Court questions the duration of time Plaintiff is substantially limited in her ability to perform her work. She has testified that "at

---

**13.** This Court does note that the Supreme Court has expressed reservations in considering "working" to be a major life activity. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (stating that "there may be some conceptual difficulty in defining 'major life activities' to include work, for it seems 'to argue in a circle to say that one is excluded, for instance, by reason of [an impairment, from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap.'") (citation omitted). However,

the Supreme Court has never reached this issue. *See id.* (stating that "[b]ecause the parties accept that the term 'major life activities includes working, we do not determine the validity of the cited regulations."). *See also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (stating that "[b]ecause of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today.").

some point noises start to bother her" indicating that noises do not always interfere with her work. The Court also notes that there is an absence of evidence as to the degree of interference felt by Plaintiff. Certainly, noises bother the average person when he or she is working. It is unclear if the effect on her ability to work is any greater than that felt by an average person in the general population.[14] Therefore, this Court finds that Plaintiff has failed to state a prima facie case and is also entitled to summary judgment on her ADA claim.[15]

**ORDERED AND ADJUDGED** that

1. Defendant's Motion for Summary Judgment (D.E. No. 25) is hereby **GRANTED**.

2. This Case is **CLOSED** and all pending motions are **DENIED as MOOT**.

---

14. Plaintiff has offered evidence that she apparently took time off of work on three occasions since Plaintiff began working at the Water and Sewer Department in November of 1996 because of her condition. (D.E. No. 28, Depo. of Flunni Carmen McGuire at 18–19) (where McGuire testified that she began working at the Water and Sewer Department in 1996). Plaintiff explicitly stated in her declaration that

> In 1998, the effects of Meniere's disease were so debilitating that I needed to leave work early to go home. On one of these occasions, I was working in the Salzedo facility. On the other occasion, I was working in the Westwood Lakes facility. Also, on July 7, 2005, I had to take a short term disability after my superiors refused my request for a location to a quieter work area, as an accommodation.

(D.E. No. 44 at 1–2). However, leaving work early twice and taking one unspecified period of short term disability where Plaintiff had been working for Defendant over nine years does not amount to a showing that Plaintiff is substantially limited in her ability to work. *See Perkins v. St. Louis County Water Co.,* 160 F.3d 446, 448 (8th Cir.1998) (finding that Meniere's disease did not substantially limit Plaintiff's ability to work because Plaintiff only missed "two and one half weeks of work in a three-year period."). *See also* (D.E. No. 28 Depo. of Flunni Carmen McGuire at 18–19) (indicating that on November 18, 1996 she was transferred to the Water and Sewer Department as a Computer Technician II).

15. This Court declines to address Defendants' argument that Plaintiff has not shown she has suffered an adverse employment action but notes its findings on this issue would be the same as those discussed in regard to Plaintiff's retaliation claim.